# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **ANDREW AMSEL,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 09-CV-389-LY** |
| | § | |
| **THE TEXAS WATER** | § | |
| **DEVELOPMENT BOARD, et al,** | § | |
| *Defendants.* | § | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

RUTH R. HUGHS
Director of Defense Litigation

ROBERT B. O'KEEFE
Division Chief

ANGELA V. COLMENERO
Texas State Bar No. 24048399
SHELLEY N. DAHLBERG
Texas State Bar No. 24012491
Assistant Attorney General
General Litigation Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Phone No. (512) 463-2120
Fax No. (512) 320-0667

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................iv

I.   INTRODUCTION ....................................................................................................1

II.  SUMMARY OF DEFENDANTS' ARGUMENTS ....................................................1

III. SUMMARY JUDGMENT EVIDENCE...................................................................2

IV.  STATEMENT OF RELEVANT FACTS ...................................................................2

    A.   TWDB Creates A Position For Plaintiff In Order To Reduce His Stress Levels................3

    B.   Plaintiff Exercises His Right To FMLA Leave, But Never Returns To Work. ..................5

    C.   Plaintiff's Position Is Eliminated Due To A Budget Shortfall............................6

    D.   Plaintiff Files for Disability Retirement Benefits After His Position Is Eliminated. ..........7

    E.   Plaintiff's Claims of Discrimination. ........................................................8

V.   STANDARD FOR SUMMARY JUDGMENT .........................................................8

VI.  ARGUMENT AND AUTHORITIES .........................................................................9

    A.   This Court Should Grant Summary Judgment On Plaintiff's ADA and Rehabilitation Act Claims As They Are Barred By The Doctrine Of Judicial Estoppel....................................9

    B.   This Court Should Grant Summary Judgment On Plaintiff's Disparate Treatment Age Discrimination Claims Pursuant To The ADEA...............................16

        1. Plaintiff Has Failed To Satisfy His Prima Facie Case of Age Discrimination............17

        2. TWDB Has Articulated Legitimate, Non-Discriminatory Reasons For the Actions Taken Against Plaintiff With Respect To His Age Discrimination Claims. ...............20

    C.   Plaintiff Cannot Show That The Proffered Explanations Given By TWDB Are False And Are In Reality A Pretext For Intentional Age Discrimination. ........................................22

    D.   The Court Should Grant Summary Judgment On Plaintiff's ADA and Rehabilitation Act Claims.........................................................................................................32

        1. Plaintiff Has Not Established He Is "Disabled." .........................................32

        2. Plaintiff's Failure to Accommodate Claim Is Without Merit. .....................38

        3. Plaintiff Cannot Demonstrate A Claim For Disparate Treatment Under the ADA or Rehabilitation Act..................................................................................42

---

CONCLUSION ................................................................................................................44

CERTIFICATE OF SERVICE..........................................................................................45

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ahrens v. Perot Sys. Corp.*, 205 F.3d 831 (5th Cir. 2000) ...................................................43

*Albertson's Inc. v. Kirkingburg*, 527 U.S. 555 (1999)............................................33, 34, 35

*Alton v. Texas A&M Univ.*, 168 F.3d 196 (5th Cir. 1999) ....................................................9

*Anderson v. Liberty Lobby*, 466 U.S. 242 (1986) .................................................................9

*Bridges v. City of Bossier,* 92 F.3d 329 (5th Cir. 1996)......................................................37

*Calef v. Gillette Co.*, 322 F.3d 75 (1st Cir. 2003) ...............................................................37

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)..............................................................8

*Chinchillo v. Powell*, 236 F. Supp. 2d 18 (D.D.C. 2003).....................................................11

*Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir. 1999) ........................................................9

*Crews v. Dow Chem. Co.*, 287 Fed. App'x 410 (5th Cir. 2008) ..........................................10

*Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108 (5th Cir. 2005) ............38

*Dortch v. Memorial Herman Healthcare Sys.-SW.*, 525 F. Supp. 2d 849 (S.D. Tex. 2007) .......41, 42

*Douglas v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) ...............................44

*DuPlantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991)...................................8

*EEOC v. Agro Distrib.*, 555 F.3d 462 (5th Cir. 2009) .........................................................32

*Equal Employment Opportunity Comm'n v. Tex. Instruments, Inc.*, 100 F.3d 1173 (5th Cir. 1996) 20

*Fancoti v. Potter*, 242 Fed. App'x 775, 776 (2d Cir. 2007).................................................13

*Flowers v. Southern Regional Physician Servs., Inc.*, 247 F.3d 229 (5th Cir. 2001) ........44

*Forsyth v. Barr*, 19 F.3d 1527 (5th Cir. 1994) ...................................................................24

*Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503 (5th Cir.2003)............................37, 42

*Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274 (11th Cir. 1999).........................28

*Haley v. Alliance Compressor LLC*, 391 F.3d 644 (5th Cir. 2004) ....................................26

*Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184 (D.D.C 2008)...........................................11

*Hornsby v. Conoco, Inc.*, 777 F.2d 243 (5th Cir. 1985)......................................................23

*Hunt v. Rapides Healthcare Sys., LLC.*, 277 F.3d 757 (5th Cir. 2001).......................26, 29

*Hypes v. First Commerce Corp.*, 134 F.3d 721 (5th Cir. 1998)..........................................41

*Jarjoura v. Ericsson, Inc.,* 266 F.Supp.2d 519 (S.D. Tex. 2003), *aff'd,* 82 Fed. App'x 998 (5th Cir. 2003)................................................................................................................31, 32

*Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir. 1996) ............................................................34

*Land v. Baptist Med. Ctr.,* 164 F.3d 423 (8th Cir. 1999) ...................................................36

*Law v. United States Postal Serv.*, 852 F.2d 1278 (Fed. Cir. 1988) .................................41

*Lawrence v. Univ. of Tex. Medical Brach at Galveston*, 163 F.3d 309 (5th Cir. 1999) ...................24

*Mahoney v. Ernst & Young, LLP*, 487 F. Supp. 2d 780 (S.D. Tex. 2006)...........................26, 28, 29

*Manns v. ArvinMeritor, Inc.*, 291 F. Supp. 2d 655 (N.D. Ohio 2003)................................29

*Marshall v. East Carroll Hosp. Serv. Dist.*, 134 F.3d 319 (5th Cir. 1998) .......................9

*Mason v. United Air Lines*, 274 F.3d 314 (5th Cir. 2001)....................................................38

*Mauder v. Metropolitan Transit Authority of Harris County, Tex.*, 446 F.3d 574 (5th Cir. 2006) ...30

*Mayberry v. Vought Aircraft*, 55 F.3d 1086 (5th Cir. 1995) ................................................25

*McCoy v. City of Shreveport,* 492 F.3d 551 (5th Cir. 2007) ..............................................31

*McInnis v. Alamo Cmty. Coll. Dist.,* 207 F.3d 276 (5th Cir. 2000) ....................................42

*McLaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457 (5th Cir. 2005) .................15, 17

*Mikel v. Conn's Appliances*, No. 1:07-CV-598, 2007 WL 4333340 (E.D. Tex. Dec. 7, 2007) .........24

*Munoz v. Echosphere, LLC*, 2010 WL 2838356 (W.D. Tex. July 25, 2010).................................41

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .....................................................................10

*Newberry v. East Tex. State Univ.*, 161 F.3d 276 (5th Cir. 1998)........................................37

*Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181 (5th Cir. 1986)..................................25

*Okoye v. University of Tex. Houston Health Sci. Ctr*, 245 F.3d 507 (5th Cir. 2001)....................17

*Okpulor v. PNC Bank*, No. 3:04-CV-1755, 2005 U.S. Dist. LEXIS 33322 (N.D. Tex. Dec. 15, 2005) ...................................................................................................34

*Palasota v. Haggar Clothing Co.*, 342 F.3d 569 (5th Cir. 2003).........................................17

*Patton v. United Parcel Services, Inc.*, 910 F. Supp. 1250 (S.D. Tex. 1995) .....................25

*Penny v. United Parcel Serv.*, 128 F.3d 408 (6th Cir. 1996) ...........................................34

*Perez v. Texas Dep't of Criminal Justice*, 395 F.3d 206 (5th Cir. 2004)...........................19

*Price v. Marathon Cheese Corp.,* 119 F.3d 330 (5th Cir. 1997)........................................32

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) ........................................16

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002)............................................28

*Richardson v. Monitronics, Inc.*, 434 F.3d 327 (5th Cir. 2005).......................................30

*Robinson v. Global Marine Drilling Co.,* 101 F.3d 35 (5th Cir. 1996) .............................36

*Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755 (5th Cir. 1996) ..................41, 42

*Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002).....................................17

*Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25 (1st Cir. 2000).......................37

*Saroli v. Automation and Modular Components, Inc.*, 405 F.3d 446 (6th Cir. 2005) ..............28

*Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973 (5th Cir. 1998)..................................28

*Smith v. Tuesday Morning Corp.*, Civil No. 3-06-CV-1046-R, 2007 WL 2851107 (N.D. Tex. Oct. 2, 2007)....................................................................................................................37

*Soledad v. United States Dep't of Treasury*, 304 F.3d 500 (5th Cir. 2002) ......................43

*Solomon v. Vilsack*, 656 F. Supp. 2d 55 (D.D.C. 2009) ...................................................................11

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999) ..................................................................37

*Swanks v. WMATA*, 116 F.3d 582 (D.C. Cir. 1997) ......................................................................11

*Talk v. Delta Airlines, Inc.*, 265 F.3d 1021 (5th Cir. 1999) ........................................................34

*Taylor v. Principal Financial Group*, 93 F.3d 155, 164 (5th Cir. 2006) ...................................38

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ..................16, 20, 22

*The State of Texas, et. al., v. Walker*, 142 F.3d 813 (5th Cir. 1998) ............................................9

*Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002) ...........................................32, 37

*Transamerica Ins. Co. v. Avenell*, 66 F.3d 715  (5th Cir. 1995) ...................................................8

*Trevino v. United Parcel Service*, No. 3:08-CV-0889-B, 2009 WL 3423039 (N.D. Tex. Oct. 23,
     2009).........................................................................................................................................41

*Tyndall v. Nat'l Educ. Centers, Inc. of Cal.,* 31 F.3d 209 (4th Cir. 1994) .................................41

*U-Haul Co. of Cleveland v. Kunkle*, 165 F.3d 29 (6th Cir. 1998) ...............................................36

*Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538 (7th Cir. 1995)...................................41

*Waggoner v. City of Garland, Texas*, 987 F.2d 1160 (5th Cir. 1993)..........................................25

*Waldrip v. General Electric Co*., 325 F.3d 652 (5th Cir. 2003) ..................................................33

*Wallace v. Soc. Sec. Admin.*, 108 F. Supp. 2d 716, 719 (S.D. Tex. 2000)...................................13

*Wallace v. Tex. Tech Univ.*, 80 F.3d 1042 (5th Cir. 1996)...........................................................24

*Walther v. Lone Star Gas Co.*, 952 F.2d 119 (5th Cir. 1992) ......................................................20

*Wheeler v. Miller*, 168 F.3d 241 (5th Cir. 1999)...........................................................................9

*Woodford v. England*, 166 Fed. App'x 726 (5th Cir. 2006) ........................................................43

*Woodson v. Scott & White Mem'l Hosp.,* 255 Fed. App'x 17 (5th Cir. 2007) .................................31

*Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296 (5th Cir. 2007) ..............................................19

## Statutes

29 U.S.C. § 207(e)(2) .....................................................................................................................26

29 U.S.C. § 2611(2)(A)(ii) .............................................................................................................26

29 U.S.C. § 2611(2)(C) ..................................................................................................................26

29 U.S.C. § 2615 ......................................................................................................................28, 29

29 U.S.C. § 2615 (a)(2) ..................................................................................................................25

29 U.S.C. § 2615(a)(1) ...................................................................................................................25

29 U.S.C. § 2617 .............................................................................................................................29

29 U.S.C. § 623(a)(1) .....................................................................................................................16

29 U.S.C. § 705(9)(B) .....................................................................................................................32

29 U.S.C. § 791(g) ...........................................................................................................................9

29 U.S.C. § 794(d) ...........................................................................................42

42 U.S.C. § 12102(2) .......................................................................................32

42 U.S.C. § 12102(2)(A) .............................................................................33, 37

42 U.S.C. § 12102(2)(C) ..................................................................................37

42 U.S.C. § 12111(8) .......................................................................................10

42 U.S.C. § 12112(b)(5)(A) .............................................................................38

42 U.S.C. § 423(d) ......................................................................................10, 11

TEX. ADMIN. CODE § 73.17(a) .....................................................................10, 11

**Rules**

29 C.F.R. § 1630.2(g)........................................................................................32

29 C.F.R. § 1630.2(h)(1)...................................................................................33

29 C.F.R. § 1630.2(i).........................................................................................32

29 C.F.R. § 1630.2(j)(1)....................................................................................35

29 C.F.R. § 1630.2(j)(2)....................................................................................33

29 C.F.R. § 1630.2(m).......................................................................................10

29 C.F.R. § 1630.9............................................................................................38

29 C.F.R. § 825.110(c)......................................................................................26

29 C.F.R. § 825.200(b)......................................................................................26

29 C.F.R. § 825.208(a)......................................................................................28

29 C.F.R. § 825.216(c)......................................................................................29

29 C.F.R. §§ 1630.2(j)(1)(i), (ii).......................................................................33

29 CFR § 825.301(c)(1).....................................................................................28

45 C.F.R. § 84.3(j)(2)(ii)...................................................................................32

FED. R. CIV. P. 56...............................................................................................1

Defendants Texas Water Development Board ("TWDB") and J. Kevin Ward, in his official capacity, (collectively, "Defendants") file this Motion for Summary Judgment and Brief in Support pursuant to FED. R. CIV. P. 56.

## I.
## INTRODUCTION

This is a case involving claims of employment discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2615(a)(1), (a)(2), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  During his entire employment with TWDB, Plaintiff Andrew Amsel ("Plaintiff") was allowed a flexible schedule, and unlike any other employee, he came to work when he felt well enough to do so and to telecommute from home.  TWDB provided Plaintiff with more hours of FMLA leave than required and then, in 2007, supplemented that leave with 720 hours of sick leave and 26 hours of emergency leave.  Due to a reduction in federal funding in Fiscal Year 2008, TWDB was required reduce the budget within the Operations and Administration ("O&A") program area and eliminated Plaintiff's position in a reduction in force.  Plaintiff claims that TWDB discriminated against him on the basis of his age and disability by terminating him and discriminated against him due to the fact he took leave under the FMLA.  As Defendants' evidence clearly demonstrates, TWDB terminated Plaintiff for legitimate, non-discriminatory, and non-retaliatory reasons.  Defendants now move for summary judgment, and for the reasons stated below, ask the Court to dismiss Plaintiff's claims against them as no question of fact exists for trial.

## II.
## SUMMARY OF DEFENDANTS' ARGUMENTS

A. This Court should grant summary judgment because Plaintiff's ADA and Rehabilitation Act claims are barred by the doctrine of judicial estoppel.

B. Plaintiff has failed to establish a *prima facie* case of disparate treatment under the ADEA because he cannot demonstrate that he was replaced by a younger individual or that other similarly situated employees were treated more favorably under nearly identical circumstances. Assuming Plaintiff can make out a *prima facie* case of age discrimination, Plaintiff cannot show any inference of discrimination or that TWDB's reasons for his termination were pretextual.

C. Plaintiff's has failed to establish a claim under the FMLA because he cannot demonstrate he was an eligible employee entitled to exercise the benefits provided by the FMLA or that he has been prejudiced by any denial of his FMLA rights.   Additionally, Plaintiff has failed to demonstrate that TWDB discriminated or retaliated against him by exercising his right to leave under the FMLA.

D. Plaintiff has failed to demonstrate that he is entitled to relief under the ADA or the Rehabilitation Act as he cannot show he was ever denied a reasonable accommodation or that TWDB's reasons for his termination were pretextual.

# III.
## SUMMARY JUDGMENT EVIDENCE

The evidence upon which Defendants rely to support their motion and brief in support of the motion is included in the Appendix, filed concurrently but as a separate document, with Defendants' motion.[1]   Defendants incorporate into their motion by reference the attachments contained in the Appendix.

# IV.
## STATEMENT OF RELEVANT FACTS

The TWDB is a state agency who provides water planning, data collection and dissemination, financial assistance, and technical assistance to the state.   Appx. 90, Ex. E, Ward Dep. 10:12-11-2; Appx. 61, Ex. C, Daws Dep. 38:13:28.   Plaintiff was employed at TWDB from May 1997 until August 31, 2007, and during his tenure at TWDB, he held the positions of Systems Analyst II, Systems Analyst III, and Program Specialist IV.   Plaintiff's First Amended Complaint ("Complaint") ¶ 6.   Plaintiff began working at TWDB in May 1997 as a Systems Analyst II in the information technology group of the Resource Information Office.   Appx. 33, Ex. A, Amsel Dep. 168:11-16.   In this position, Plaintiff's direct supervisor was Darryl Lindgens and his basic job

---

[1] Defendants have filed the entire Appendix under seal in support of the Motion for Summary Judgment, in an abundance of caution, given the fact there are numerous excerpts and deposition testimony referencing and discussing Plaintiff's medical condition.

duties involved network administration.   Appx. 33-34, Ex. A, Amsel Dep. 168:170:21.   While Plaintiff worked under the supervision of Lindgens, he was allowed to work a flexible work schedule.   Appx. 34, Ex. A, Amsel Dep. 171:2-21.   Lindgens allowed Plaintiff to arrive at the office at his discretion depending on how he was feeling, and he was provided the opportunity to telecommute from home 3 to 4 hours per day.   Appx. 129, Ex. H-5.   Amsel does not dispute that he was provided with these working conditions by TWDB.   Appx. 23, Ex. A, Amsel Dep. 116:2-12.

### A.  TWDB Creates A Position For Plaintiff In Order To Reduce His Stress Level.

In 2005, the Texas Legislature, through the Department of Information Resources ("DIR"), decided to outsource state agencies' network administration to a data center consortium headed by IBM.   An initial part of the program involved identifying state employees engaged in network administration who would transfer from state employment to working for IBM.   Appx. 82, Ex. D. Adams Dep. 198:5-25.   The selection as to which state employees would be transferred to IBM was based on the functions of an employee's job and not on the individual skills or abilities of the employee.   Appx. 82, Ex. D, Adams Dep. 199:1-22.   Plaintiff's position, along with other positions at TWDB that were associated with network administration, was identified by IBM and DIR as being appropriate for outsourcing.   Appx. 82, Ex. D, Adams Dep. 199:1-22; Appx. 48, Ex. B, Glenn Dep. 123:19-25, 124:1-14.

When Plaintiff learned that his position was scheduled to be outsourced to IBM, he advised Lindgens and Robert Ruiz, who was the Director of Human Resources at the time, that the stress of potential outsourcing was impacting his physical condition.   Appx. 34, Ex. A, Amsel Dep. 172:8-173:13.   Plaintiff met with Ruiz in the fall of 2005 about the stress he was experiencing, and provided medical documentation from his physician regarding his current medical condition.   Appx. 130, Ex. H-6; Appx. 132, Ex. H-8.   In particular, Plaintiff's physician indicated that he be placed in a position at work that is "as stress free as possible."   Appx. 132, Ex. H-8.

---

In an effort to address Plaintiff's concerns and alleviate any stress he was experiencing due to the possibility of being outsourced, Ruiz communicated with Lisa Glenn, Chief of O&A, about the possibility of creating a position for him in her division.  Appx. 114, Ex. H, Adams Aff. ¶ 4; Appx. 77, Ex. D, Adams Dep. 167:6-168:14; Appx. 230, Ex. B, Glenn Aff. ¶¶ 4-5.  Because Glenn recognized that there was a current business need in the Communications Group for an additional individual to serve in a back-up role to Mike Parcher, Glenn offered to create a position for Plaintiff in her division.  Appx. 68, Ex. C, Daws Dep. 150:17-24; 153:15-23; Appx. 43, 47, Ex. B, Glenn Dep., 80:24-25, 81:1-82:3, 113:3-10; Appx. 230, Ex. J, Glenn Aff. ¶¶ 4-5.  Plaintiff was offered the position of Program Specialist IV in the Communications Group in the O&A division, and officially transferred to O&A in December 2005.  Appx. 236, Ex. J-1.  His direct supervisor was Carla Daws, Team Lead of the Communications Group.  Appx. 315, Ex. K, Daws Aff. ¶ 2.

Before Plaintiff transferred into O&A, Ruiz informed Glenn about the flexible work schedule Plaintiff was being provided and she reviewed medical documentation submitted by his physicians.  Appx. 230, Ex. J, Glenn Aff. ¶ 4.  When Plaintiff began working in the Communications Group, Glenn and Daws allowed him a lot of flexibility in terms of his work schedule, and agreed to let him work from home in the mornings due to his health issues.  Appx. 63-64, Ex. C, Daws Dep. 70:8-12, 66:4-8, 99:16-20; Appx. 44, Ex. B, Glenn Dep. 89:13-20, 104:18-105:14; Appx. 230-31, Ex. J, Glenn Aff. ¶ 8.  Plaintiff usually came to work around 10:00 a.m. and received credit for the hours he worked from 8:00 a.m. to 10:00 a.m., and he often left work early.  Appx. 66-67, Ex. C, Daws Dep. 136:18-137:5.  Plaintiff's schedule was essentially the same in the Communications Group as it had been in the IT Group.  Appx. 62-63, Ex. C, Daws Dep. 65:6-26; 70:6-12, 76:4-12; Appx. 43, Ex. B, Glenn Dep. 79:11-80:14.

On March 20, 2006, Glenn met with Plaintiff and sent him a memo regarding his work schedule because Daws had been having a difficult time staying in touch with Plaintiff and knowing

what his work schedule was while he was telecommuting.  Appx. 27, Ex. J-3; Appx. 230-31, Ex. J,

Glenn Aff. ¶¶ 8-9.  Glenn sent a memo to Plaintiff to help him understand that his new position was

customer service based, and as a result, his team needed to have some level of consistency with his

work schedule in order to serve its internal customers.  Appx. 230-31, Ex. J, Glenn Aff. ¶¶ 8-12;

Appx. 54-55, Ex. B, Glenn Dep. 208:2-25, 211:14-213:19.   Glenn did not intend to take away

Plaintiff's telecommuting flexibility, but instead, she only wanted him to set standard hours so that

Daws could inform other individuals at the agency when he would be in the office.  Appx. 230-31,

Ex. J, Glenn Aff. ¶¶ 8-12; Appx. 55, Ex. B, Glenn Dep. 210:6-21.   Because Plaintiff was a new

member of her team, Glenn and Ruiz requested Plaintiff to provide updated medical documentation

from his physician in order to support his need to telecommute on a daily basis.  Appx. 230-31, Ex.

J, Glenn Aff. ¶¶ 8-12.  Nevertheless, even before Glenn received the official medical documentation

from Plaintiff's physicians, she continued to allow Plaintiff the flexibility to perform work from

home.  Appx. 231, Ex. J, Glenn Aff. ¶ 9; Appx. 239, 241, Ex. J-4, J-6.  After Glenn communicated

with Plaintiff about the need to establish a consistent work schedule, Plaintiff expressed his

satisfaction with the flexibility Glenn had agreed to provide him. Appx. 247, Ex. J-6.[2]   At no point

in time did Plaintiff ever complain that he needed further accommodations beyond what TWDB

was providing him.  Appx. 23, Ex. A, Amsel Dep. 115:17-116:1.

### B.  Plaintiff Exercises His Right To FMLA Leave, But Never Returns To Work.

While Plaintiff was working in the Communications Group, he exercised his right to FMLA

leave on May 30, 2006 due to an episode of bronchitis.  Appx. 362-63, Ex. U; Appx. 139, Ex. H-14;

Appx. 4-5, Ex. A, Amsel Dep. 25:24-28:5, 29:18-30:17.  Pursuant to TWDB policies, Plaintiff was

entitled to use 12 weeks (480 hours) of paid/unpaid leave in a 12-month period until May 29, 2007.

Appx. 120-24, Ex. H-4.  According to Plaintiff's timesheets, he took FMLA leave intermittently

---

[2] Consistent with Glenn's request, Plaintiff also provided Glenn and Daws with weekly reports regarding the hours he spent telecommuting.  Appx. 242-48, Ex. J-7, J-8.

over the 12-month period, and he exhausted all leave associated with this specific FMLA leave event on April 25, 2007.  Appx. 146-74, Ex. H-18.  Plaintiff used FMLA leave associated with this same event when he traveled to Thailand to receive stem cell treatment.  Appx. Appx. 146-74, Ex. H-18.  Upon returning from Thailand in March 2007, Plaintiff did not return to work, but continued to remain on FMLA leave until April 25, 2007.  Appx. 146-74, Ex. H-18.  By April 2007, Amsel had not worked 1250 hours during the prior calendar year from the date his FMLA event began, and thus, was not eligible for additional FMLA leave.  Appx. 146-74, Ex. H-18.  At the conclusion of Plaintiff's FMLA leave on April 25, 2007, TWDB did not refuse to reinstate Plaintiff.  Instead, it afforded him additional paid leave from the agency's sick leave pool, in the amount of 720 hours.  Plaintiff's sick leave pool requests were granted on April 16, 2007.  Appx. 145, Ex. H-17; Appx. 140-44, H-15, Appx. 232, Ex. J, Glenn Aff. ¶ 13; Appx. 391-92, Ex. AA-BB.

After applying for and being approved for sick leave pool, Plaintiff sent an email to his supervisors on June 6, 2007 informing them that he was still not able to return to work.  Appx. 252, Ex. J-12.  Plaintiff stated that his situation remained the same with no improvement, and he had not been released to work at this time.  Plaintiff stated that he was interested in any work at home opportunities at TWDB, but he never informed Glenn or Daws when he intended to return to work or if his physicians would release him to return to work.  Appx. 252, Ex. J-12.

### C.  Plaintiff's Position Is Eliminated Due To A Budget Shortfall.

After the General Appropriations Act was signed by the Texas Legislature at the end of May 2007, some program areas within TWDB received reduced funding based on the fact that TWDB received less federal funding than it originally anticipated.  Appx. 176, Ex. I, Bankhead Aff. ¶ 6; Appx. 179-87, Ex. I-1.  Due to the fact that O&A is funded in part by general revenue and federal funds, this area was directly impacted by the decrease in appropriation authority.  Appx. 176, Ex. I, Bankhead Aff. ¶ 8; Appx. 227-28, Ex. I-4.

The decision to eliminate Plaintiff's position in the Communications Group was based on a business need.  Appx. 42, Ex. B, Glenn Dep. 63:16-25, 64:1-2; Appx. 232, 234, Ex. J, Glenn Aff. ¶¶ 14-16, 23.  The Operations and Administration division was over budget by approximately $80,000, and based on budget targets Glenn received from the TWDB's budget director, it became clear that her program area needed to reduce its budget.  Appx. 41, Ex. B, Glenn Dep. 58:2-8, 61:2-7; Appx. 232, Ex. J, Glenn Aff. ¶¶ 14-15.  Glenn instructed a subordinate to perform a budget analysis in June 2007 to determine what positions she could eliminate to reduce O&A's operating budget. Appx. 86, Ex. D, Adams Dep. 214:2-215:24; Appx. 117, Ex. H-1.  After reviewing this budget analysis, Glenn made the determination that Plaintiff's position and a vacant governmental relations position should be eliminated because these were the least mission critical positions from her division's standpoint.  Appx. 42, Ex. B, Glenn Dep. 63:16-25, 64:1-2; Appx. 232, 234, Ex. J, Glenn Aff. ¶¶ 14-16, 23.  Given that she had created a position for Plaintiff in December 2005 and the responsibilities and duties he had been performing were all done by another employee before, Glenn decided that Plaintiff's position was nonessential to the division.   Glenn sent Plaintiff a letter informing him that his position was being eliminating due to budget constraints the agency was facing in Fiscal Year 2008 on July 3, 2007.  Appx. 250, Ex. J-10.  Plaintiff remained employed at TWDB until August 31, 2007, and the agency granted him 26 hours of emergency leave so that he could remain on paid leave status until the date of his separation.  Appx. 251, Ex. J-11.

**D.  Plaintiff Files for Disability Retirement Benefits After His Position Is Eliminated.**

Plaintiff applied for disability retirement benefits on July 17, 2007 while he was still employed at TWDB.  Appx. 327-28, Ex. L.  Disability retirement benefits are administered by the Employee Retirement System ("ERS") of Texas. In order for an employee to be eligible for disability benefits, he must demonstrate that he cannot perform the functions of his job without an accommodation.  TEX. ADMIN. CODE 73.17(a).  In his application to ERS, Plaintiff affirmatively

swore that he could not perform his duties even with an accommodation. Appx. 327-28, Ex. L. Additionally, Plaintiff submitted medical documentation from his physicians and has continued to submit reevaluation forms from his physicians stating that he is permanently incapacitated from working in a full-time capacity. Appx. 337-58, Ex. N-R. Plaintiff was approved for disability benefits effective August 31, 2007 and continues to receive these benefits as of today. Appx. 359, Ex. S; Appx. 32, Ex. A, Amsel Dep. 151:12-152:12.

### E. Plaintiff's Claims of Discrimination.

On December 27, 2007, Plaintiff filed a charge of discrimination alleging that he had been discriminated against on the basis of his age, disability, and the fact he exercised his right to FMLA leave. Appx. 369, Ex. X. Plaintiff filed his Complaint in this Court on May 14, 2009 alleging claims of employment discrimination and retaliation pursuant to the ADEA, FMLA, ADA, and the Texas Labor Code against TWDB. After this Court granted Defendants' motion to dismiss, Plaintiff amended his complaint to assert claims pursuant to ADA, FMLA, and ADA against Ward, in his official capacity, for prospective injunctive relief. Plaintiff has also asserted a Rehabilitation Act claim against TWDB and Ward, in his official capacity. Because Plaintiff cannot demonstrate that he is entitled to relief on any of his claims, Defendants now move for summary judgment.

**V.**
**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The defendant, who would not bear the burden of proof at trial, is not required to present evidence in order to put Plaintiff's claims in issue. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). Instead, the defendant can satisfy his burden by "pointing out to the district court . . . that there is an absence of evidence to support the non-moving party's case. " *Celotex Corp.*, 477 U.S. at 325. Once the defendant meets that burden, the plaintiff may not rest on

_____

allegations in his pleadings, but must produce competent, tangible evidence to survive summary judgment. *Id.*

To avoid summary judgment, plaintiff must show a genuine issue of material fact as to each element of every disputed claim. *Anderson v. Liberty Lobby*, 466 U.S. 242, 247-48 (1986). The materiality of a fact is determined by reference to the substantive law forming the basis of the plaintiff's complaint. *Id.* at 248. To create a genuine issue, plaintiff cannot rely on unsubstantiated assertions, conclusory allegations, unsupported speculation, mere conjecture, or his own subjective belief. *Marshall v. East Carroll Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998). For this analysis, the evidence is examined in the light most favorable to the nonmovant. *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir. 1999). But "[w]here critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999). "If the record as a whole could not lead a rational jury to find for the nonmoving party, there is no genuine issue for trial and summary judgment is warranted." *Wheeler v. Miller*, 168 F.3d 241, 247 (5th Cir. 1999).

## VI.
## ARGUMENT AND AUTHORITIES

### A. This Court Should Grant Summary Judgment On Plaintiff's ADA and Rehabilitation Act Claims As They Are Barred By The Doctrine Of Judicial Estoppel.

The Court's analysis of Plaintiff's ADA and Rehabilitation Act claims[3] should begin and end with the resolution of a single question: whether a plaintiff who applies and receives ERS disability retirement benefits may pursue a claim for failure to accommodate or disability discrimination. The answer to this question is clearly "no." Because ERS disability retirement benefits are *only* available for individuals whose disabilities cannot be accommodated, Plaintiff, as

---

[3] The standards for enforcing the Rehabilitation Act are the same as the ADA and case law analyzing the disability benefits under the ADA applies with equal force to the Rehabilitation Act. *See* 29 U.S.C. § 791(g).

the recipient of such benefits, is precluded and judicially estopped[4] from pursuing relief under the ADA or the Rehabilitation Act based on claims that a failure to accommodate his disability was discriminatory or that he was terminated because of his disability.

ERS disability benefits are available to state employees who are incapacitated from the further performance of duty.  Tex. Admin. Code § 73.17(a).  According to ERS regulations, "incapacitated" means that the "member has demonstrably sought and been denied workplace accommodation of the disability in accordance with applicable law, and that the member is physically or mentally unable to continue to hold the position occupied and to hold any other position offering comparable pay."  *Id.*  Under the ADA and the Rehabilitation Act, however, in order to establish a *prima facie* case of disability discrimination in a disparate treatment case, Plaintiff must show that he is a qualified individual.  A "qualified individual" is one who can perform the essential functions of a job with or without reasonable accommodation.  42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).  Stated differently, an employee can only sue under the ADA and the Rehabilitation Act if he or she can perform the essential functions of the position with a reasonable accommodation.  *Crews v. Dow Chem. Co.*, 287 Fed. App'x 410, 411-12 (5th Cir. 2008).

These requirements for eligibility distinguish ERS disability retirement benefits from other disability benefit programs.[5]  For instance, unlike Social Security Disability Insurance ("SSDI") benefits, which allow disability payments regardless of whether an accommodation is possible, ERS

---

[4] Judicial estoppel applies when a "party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

[5] In *Cleveland v. Policy Management Systems Corp.*, the Supreme Court addressed whether an individual's application for SSDI benefits precluded an ADA claim.  526 U.S. 795, 800 (1999).  Under the Social Security Act, an individual is disabled if he cannot "engage in any substantial gainful activity" regardless of potential accommodations, while, under the ADA, the same individual is a "qualified individual with a disability" if he can perform the essential functions of his job "with . . . reasonable accommodation."  *Id.* at 801, 803; 42 U.S.C. § 423(d).  The Court reasoned that, while both statutes aid individuals with disabilities, significant differences exist between them, which allow the two claims to "comfortably exist side by side."  *Cleveland*, 526 U.S. at 802-03.  The Court noted, however, that in some cases, SSDI benefit claims may conflict with ADA claims, especially if the plaintiff makes a "sworn assertion" in applying for disability benefits that he is unable to work even with accommodations.  *Id.* at 806.  Since that caveat did not apply, the Court concluded that receiving SSDI benefits does not automatically preclude a plaintiff's Rehabilitation Act claim.

benefits prohibit disability retirement payments if an individual can work with an accommodation. *Compare* 42 U.S.C. § 423(d) (defining disability under the SSA as the "inability to engage in any substantial gainful activity") *with* Tex. Admin. Code § 73.17(a) (requiring a showing that the member's condition makes it unable for him to perform his duties even with a reasonable accommodation).  In other words, ERS does take the possibility of reasonable accommodation into account in determining an applicant's eligibility for ERS disability retirement benefits.  The receipt of ERS disability retirement benefits depends on the unavailability of a reasonable accommodation and cannot be reconciled with a claim that a plaintiff was entitled to but not provided with a reasonable accommodation.  Thus, the requirements for ERS disability retirement benefits and the elements for ADA and Rehabilitation Act claims do not "comfortably exist side by side." *Cleveland*, 526 U.S. at 802-03.

In analyzing the eligibility requirements for programs similar to ERS disability retirements, federal courts have held that "[a]n employee cannot plausibly claim that he is unable to work at all to obtain [disability] benefits but able to work with an accommodation in connection with a Rehabilitation Act claim."  *Chinchillo v. Powell*, 236 F. Supp. 2d 18, 27 (D.D.C. 2003); *see also Solomon v. Vilsack*, 656 F. Supp. 2d 55, 59-62 (D.D.C. 2009).  "A plaintiff filing both a [disability] claim for benefits and a Rehabilitation Act claim of discrimination cannot reconcile the inherent conflict, as might a plaintiff who sought SSDI benefits along with relief based on a claim of discrimination."  *Chinchillo*, 236 F. Supp. at 27.  In such cases, the federal courts have granted summary judgment in favor of the employer because the plaintiff appeared to negate an essential element of his case.  *Id.* at 806; *see also Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 194-95 (D.D.C 2008); *Swanks v. WMATA*, 116 F.3d 582, 586 (D.C. Cir. 1997).

Applying these principles to the instant case, this Court should grant summary judgment on Plaintiff's ADA and Rehabilitation Act claims.  Plaintiff applied for ERS disability retirement

_____

benefits on July 17, 2007 representing that he was permanently incapacitated—almost a month and a half before his employment at TWDB officially ended.  Appx. 327-28, Ex. L.  Plaintiff and his physicians stated under oath to ERS that he was permanently incapacitated, totally disabled, and unable to perform his duties even if he received a reasonable accommodation.  Appx. 337-47, Ex. N-O.  In particular, the application asked Plaintiff whether "[his] condition makes [him] unable to perform [his] duties even with a reasonable accommodation," to which Plaintiff responded "Yes." Appx. 329-36, Ex. M.  As part of the application, Plaintiff represented that his "position was terminated before [he] was able to negotiate accommodation with his employer (TWDB)" and that his incapacity to continue any State or comparable paying employment would continue for life.  *Id*. Plaintiff has further testified that he was "forced" into applying for disability retirement benefits to avoid losing his health insurance coverage.  Appx. 27-32, Ex. A, Amsel Dep. 130:20-24, 134:11-14, 138:23-140:15, 142:2-16, 151:1-21; Appx. 375, 387, Ex. Y.  Based on Plaintiff's representations, ERS awarded him disability retirement benefits on November 21, 2007, which were retroactive to August 31, 2007.  Appx. 359, Ex. S.  Plaintiff has also continued to represent to ERS—submitting documentation as late as October 2009—that he cannot return to work because he is permanently incapacitated due to his disability.  Appx. 355-58, Ex. Q-R.  Now, for purposes of this lawsuit, Plaintiff claims that he is a qualified individual who is able to perform the functions of his job with a reasonable accommodation.  Complaint ¶ 33; Appx. 28, Ex. A, Amsel Dep. 134:11-25, 135:4-10. Plaintiff's position in this lawsuit is clearly inconsistent with his representations to ERS that he cannot work even with an accommodation.

Plaintiff's receipt of ERS disability retirement benefits, which he currently receives upon a representation that he is "unable to work" and which he is only eligible for if he cannot reasonably accommodated, cannot be reconciled his with claim that he is a qualified individual who can now work with a reasonable accommodation.  The claims are mutually exclusive, and receipt of

the former precludes the latter.  *See Fancoti v. Potter*, 242 Fed. App'x 775, 776 (2d Cir. 2007) (precluding a Rehabilitation Act claim after obtaining civil service retirement system benefits because "the requirements for obtaining a [CSRS] disability retirement annuity are wholly inconsistent with the requirements for proving a claim of disability discrimination under the Rehabilitation Act"); *Wallace v. Soc. Sec. Admin.*, 108 F. Supp. 2d 716, 719 (S.D. Tex. 2000) (recognizing that a claim of disability retirement under the civil service retirement system precludes a Rehabilitation Act claim because plaintiffs applying for disability retirement under the system must be unable to work even with an accommodation).

Similarly, Plaintiff's ADA and Rehabilitation Act claims are also barred because he cannot offer a sufficient explanation regarding the contradictions in his sworn assertions to this Court and to ERS.  In *Cleveland*, the Supreme Court recognized that where the plaintiff makes a "sworn assertion" in applying for disability benefits that he is unable to work even with accommodations such a claim may conflict with an ADA claim.  526 U.S. at 806.  The procedure outlined by the Court requires a plaintiff to "proffer a sufficient explanation" of the apparent contradiction between the sworn assertions.  *Id.*  The Court also noted that a Plaintiff cannot create a genuine issue of fact by simply contradicting his previous sworn statements.  *Id.*  Instead, a plaintiff's explanation of the inconsistency must be sufficient to "warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of his job, with or without a reasonable accommodation." *Id.* at 807. If a plaintiff fails to explain the inconsistency between his qualification and disability, or if the explanation is insufficient, then his ADA and Rehabilitation Act claims are judicially estopped by his earlier statements regarding disability.  *Id.*

Here, Plaintiff is unable to provide such an explanation to address the genuine conflict between his statements to ERS and his claim under the ADA and Rehabilitation Act.  Unlike the

plaintiff in *Cleveland*, who did not make any statement about her ability to perform her job with a reasonable accommodation, Plaintiff affirmatively swore in his ERS application he was permanently incapacitated and unable to perform his duties even with a reasonable accommodation. Appx. 329-36, Ex. M.  Alternatively, in support of his ADA and Rehabilitation Act claims, Plaintiff has represented to the Court through statements made in his complaint that he would have been able to perform the duties of his position with a reasonable accommodation.  It is without question that Plaintiff's statements are facially contradictory.  Plaintiff, however, has failed to explain the inconsistent statements between the positions he has taken in this litigation and the representations to ERS.  When asked during his deposition whether he is currently able to pursue full-time employment, Plaintiff responded that "[he] can work in a variety of jobs if given the proper accommodation."  Appx. 30, Ex. A, Amsel Dep. 143:2-8.  Plaintiff also stated that "most people who are disabled can do some sort of work.  Whether they choose to or not is their option.  I would choose to work."  Appx. 30, Ex. A, Amsel Dep. at 142:19-20; 143:2-8.  Plaintiff also testified that even though he is currently receiving disability retirement benefits (which require him to be permanently incapacitated), if and when he tells his physicians he is ready to return to work full time, they will release him.  Appx. 31, Ex. A, Amsel Dep. 147:8-25; 148:1-4; 148:5-11.[6]

The testimony of Plaintiff's physician also does not provide any assistance to Plaintiff in explaining his inconsistent statements.  Indeed, despite representing to ERS that Plaintiff was permanently incapacitated from working, his physician testified that it was not his opinion Plaintiff was incapable of doing any kind of gainful employment.  Appx. 104, Ex. G, Alsup Dep. 18:25-19:3. Plaintiff's physician attempted to explain this discrepancy by stating: "I think if he wanted not to work that was very medically reasonable.  But I don't think that because he could be disabled, that

---

[6] Plaintiff also stated that after he submitted his application for disability retirement benefits "he looked regularly" on the TWDB web site for jobs during the period from August 3 and December 31, 2007.  Appx. 28, Ex. A, Amsel Dep., 134:7-14.  Further, Amsel testified that he "always intended to return to work," and that during September through December 2007, he was physically able to work "given proper accommodation."  Appx. 28, Ex. A, Amsel Dep., 134:15-20; 135:6-10

he necessarily needed to be disabled."  Appx. 104, Ex. G, Alsup Dep. 19:6-9.[7]  Plaintiff's physician also testified that Plaintiff was "totally disabled," not incapacitated because "[t]his does not mean he cannot do anything."  Appx. 109, Ex. G, Alsup Dep. 56:2-18.  Plaintiff's physician also represented that he completed the ERS medical evaluation forms and listed Plaintiff as being permanently incapacitated based on the fact that "it would be very hard for [Plaintiff] to find employment" because of his age and his heart disease.  Appx. 109, Ex. G, Alsup Dep. 56:25-57:8.  His physician also confirmed that if and when Plaintiff wanted to return to work, he would release him.  Appx. 106, Ex. G, Alsup Dep. 36:20-37:1-4.

This evidence indicates he is talking out of both sides of his mouth in order to recover disability benefits from ERS while at the same time trying to recover relief under the ADA and Rehabilitation Act before this Court.  Plaintiff's testimony confirms he has complete control over his physician's diagnosis, thereby giving him the ability to make the medical decision as to when he is able to return to work.  This is in stark contrast to his statements to the ERS where he swore that he would be able to return to work only if his medical condition improved dramatically.  Plaintiff, however, has not produced any medical records in this case showing that his condition has improved at all, let alone dramatically.  When a plaintiff fails to explain the inconsistency between his qualifications and disability, or if the explanation is insufficient, the ADA and Rehabilitation Act claims are judicially stopped by the plaintiff's earlier statements.  *McLaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457, 463 (5th Cir. 2005).  Accordingly, given the genuine

---

[7] *See also* Appx. 104, 106, 108, Ex. G, Alsup Dep. 20:11-18 (stating that Plaintiff could have worked "in the position he was in before, because they had accommodated him, and he did some telecommunication from home, they let him park close up, and that kind of thing . . . ."); 35:5-9 (based on the accommodations he was getting for a while with his previous job, it was okay for him to work); 46:13-47:5 (stating he would sign a return to work if Plaintiff got the same accommodations as he did at the TWDB).  Additionally, Plaintiff's physician admitted that he made his medical decision that Plaintiff was permanently incapacitated for purposes of his disability retirement application based on his prior experience with the Travis County retirement system, and he did not know whether the standards for this benefits program were the same for the ERS disability retirement benefits program.  Appx. 109, Ex. G, Alsup Dep. 57:16-25, 58:1-3.  Plaintiff's physician reviewed his disability retirement application to determine whether he could get another job, but did not consider the issue of accommodations.  Appx. 110, Ex. G, Alsup Dep. 61:7-25, 62:1-14.

conflict between Plaintiff's statements to ERS and his claims in this case, this Court should find that Plaintiff's ADA and Rehabilitation Act claims are barred by the doctrine of judicial estoppel.

**B. This Court Should Grant Summary Judgment On Plaintiff's Disparate Treatment Age Discrimination Claims Pursuant To The ADEA.[8]**

The ADEA makes it unlawful for an employer "to fail to refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of an individual's age." 29 U.S.C. § 623(a)(1). In the past in a case such as this one, where direct evidence of discrimination is unavailable, the Fifth Circuit has allowed plaintiff to prove discrimination using the modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). As modified, *McDonnell Douglas* consists of three stages. First, the plaintiff must establish a *prima facie* case of discrimination, which "creates a presumption that the employer unlawfully discriminated against [them]." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for any adverse employment actions taken against the employees. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiffs to demonstrate that the reason produced was pretext for discrimination.

Recently, the Supreme Court held that under the ADEA the burden of persuasion never shifts to a party defending a mixed-motive discrimination claim. *Gross v. FBL Financial Servs., Inc.*, 129 U.S. 2343 (2009). Instead, the plaintiff retains the burden to establish age was the "but-for" cause of the employer's action. *Id.* at 2352. "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* This Court should look to this case as guidance and require Plaintiff to meet the same evidentiary burdens.

---

[8] Plaintiff's age discrimination is only asserted against Ward, in his official capacity. *See* Complaint ¶¶ 45-50.

### 1.   *Plaintiff Has Failed To Satisfy His* **Prima Facie** *Case of Age Discrimination.*

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of age discrimination.  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). More specifically, a plaintiff must show that (1) he suffered an adverse employment action; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge, demotion, or nonselection; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.  *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (quotation omitted).  An ADEA plaintiff can show he was "otherwise discharged because of his age" by showing that he was treated less favorably than younger, similarly situated coworkers.  *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

Here, Plaintiff contends that TWDB discriminated against him on the basis of his age when it terminated him effective August 31, 2007.  Defendants submit that at the time Plaintiff was terminated from his position, he was over the age of 40 and therefore within the protected class, thus, satisfying the first and third requirements of his *prima facie* case.  Plaintiff, however, cannot establish the second or fourth elements of his *prima facie* case.  Plaintiff cannot demonstrate that he meets the basic qualifications for the position of Program Specialist IV, the position he held at the time of his termination.  Given that Plaintiff has affirmatively represented to ERS that he is permanently incapacitated from working, he is judicially estopped from claiming he is qualified for purposes of his age discrimination claim.  *See McClaren*, 420 F.3d at 463; *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 120-21 (3d Cir. 2003) (holding plaintiff judicially estopped from establishing ADEA claim where attempt to explain inconsistency between disabled and qualified consisted only of argument that his termination rendered him "unable to work").

Likewise, Plaintiff cannot establish that he was replaced by an individual who was younger than him when he was terminated in August 2007.  Plaintiff's position was eliminated through a reduction in force and his former position of a Program Specialist IV in the Communications Group has not been filled by any other individual.  Appx. 52, Ex. B, Glenn Dep. 172:5-173:3; Appx. 65, 70, Ex. C, Daws Dep. 164:12-17, 128:8-20.  Since his termination on August 31, 2007, Plaintiff's job duties and responsibilities have been performed by Mike Parcher, who was the other individual working with Plaintiff in the Communications Group.  Appx. 52, Ex. B, Glenn Dep. 172:5-173:2; Appx. 70, Daws Dep. 164:12-17.  Parcher is over the age of 40, and thus, is within the protected class.  Appx. 230, Ex. J, Glenn Aff. ¶ 5.  While Plaintiff may contend that the number of employees increased in the O&A division after he was terminated, this does not demonstrate that TWDB replaced Plaintiff with a younger individual.  Appx. 233, Ex. J, Glenn Aff. ¶ 20-22.  After Plaintiff was terminated, there were several departmental realignments which resulted in other divisions merging with the O&A division.  Appx. 233, Ex. J, Glenn Aff. ¶ 20-22, Appx. 279-314, Ex. J-13; Appx. 91, Ex. E, Ward Dep. 109:7-110:5.  Nevertheless, none of the individuals who were reassigned or hired into to the O&A division assumed Plaintiff's prior position or job responsibilities.  Appx. 233, Ex. J, Glenn Aff. ¶ 20-22, Appx. 52, Ex. B, Glenn Dep. at 172:5-174:5; Appx. 70, Ex. C, Daws Dep. 164:12-17, 128:8-20.[9]

Plaintiff also cannot demonstrate that he was treated less favorably due to his age than other employees outside his protected class who were similarly situated to him.  The Fifth Circuit requires that "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision []," *Perez v. Texas Dep't of*

---

[9] To the extent Plaintiff attempts to claim that other individuals who were realigned into the Communications Group replaced him, this argument would fail.  Merry Klownower and JoAnn Estrada were initially hired into the Water Science & Conservations program area and then transferred to O&A when the Communications and Records Management groups merged in January 2008.  Appx. 233, Ex. J, Glenn Aff. ¶ 20-22, Appx. 279-314, Ex. J-13.  Nevertheless, Klownower and Estrada held different positions than Plaintiff with different responsibilities.  Appx. 60-61, Ex. C, Daws Dep. 35:17-38:3; Appx. 52-53, Ex. B, Glenn Dep. 173:3-174:1; Appx. 233, Ex. J, Glenn Aff. ¶ 20-22.

*Criminal Justice*, 395 F.3d 206, 209 (5th Cir. 2004), and the comparator employees' position in the organization, *e.g.*, job title, duties, supervisor should be roughly the same. *See, e.g., Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2007). Plaintiff has affirmatively stated that he is not attempting to compare himself to any other individual at TWDB who he claims were treated more favorably. Appx.17, Ex. A, Amsel Dep. 89:14-18.[10] Because there is no evidence that any employees were similarly situated to Plaintiff, this lack of proof is fatal to his claim. *See, e.g., Perez*, 395 F.3d at 209 (the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision[].").  Accordingly, Plaintiff has failed to establish a *prima facie* case of age discrimination.

Nevertheless, even if this Court finds that Plaintiff has established the elements of his *prima facie* case of age discrimination, the Court should not proceed to stage two of the *McDonnell Douglas* test. Plaintiff must still demonstrate that age was the "but-for" cause of TWDB's decision to terminate Plaintiff, *see Gross*, 129 S.Ct. at 2352, and Plaintiff cannot meet this burden. Other than mere conjecture or suspicion that Glenn did not like him and sought to terminate him because of his age, Plaintiff does not have any competent evidence to demonstrate that age was the but-for cause of his termination. Appx. 16, Ex. A, Amsel Dep. 86:23-87:13, 89:1-7, 89:8-13. Indeed, as discussed in more detail *infra*, the evidence shows that the decision to terminate Plaintiff was the result of a reduction in force based on budgetary constraints facing the agency in Fiscal Year 2008. Accordingly, this Court should grant summary judgment on Plaintiff's age discrimination claim.

---

[10] Significantly, the only employee who could be described as being "similarly situated" to Amsel is Parcher. Yet, because Parcher is 56 years old, he is within Plaintiff's protected class, and for purposes of his age discrimination claim, he is not a proper comparator. Appx. 230, Ex. J, Aff. of Glenn ¶ 5. Even if Plaintiff attempts to compare himself to Matt Erickson, who held the position of Web Administrator at TWDB, for purposes of his age discrimination claim, his efforts would be futile. Not only is Erickson not a proper comparator in terms of his overall job responsibilities and functions as well as his title, but he did not replace Plaintiff. Appx. 230. 233, Ex. J, Aff. of Glenn ¶¶ 6, 22. As the Web Administrator, Erickson had a completely different skill set than Parcher and Amsel as he was responsible for maintaining and managing the agency's website and the infrastructure and architecture associated with website development. Appx. 44, Ex. B, Glenn Dep. 86:14-23. Both Parcher and Amsel, were primarily responsible for updating information on the agency website, linking it to the website, and served the printing and binding needs of the agency. Appx. 59, Ex. C, Daws Dep. 14:8-14.

**2.  *TWDB Has Articulated Legitimate, Non-Discriminatory Reasons For the Actions Taken Against Plaintiff With Respect To His Age Discrimination Claims.***

Assuming that Plaintiff has established a *prima facie case* of age discrimination and Plaintiff can demonstrate that age is the "but for" cause for his termination, the burden shifts to TWDB to produce evidence that the adverse employment action taken against plaintiff was for a legitimate, non-discriminatory reason.  *McDonnell Douglas*, 411 U.S. at 802.    The defendant has only the burden of production, not of persuasion.  *Burdine,* 450 U.S. 248, 254 (1981).  As explained below, TWDB has fully met this burden.

The summary judgment proof attached to this motion articulates in substantial detail the circumstances leading to the employment action taken against Plaintiff.  The decision to terminate Plaintiff was not motivated in any way by Plaintiff's age but was the result of TWDB's decision that a reduction in force was necessary due to a decrease in legislative appropriated funds.  The Fifth Circuit recognizes a reduction in force—the very reason TWDB has provided for the elimination of Plaintiff's position—as a presumptively legitimate, nondiscriminatory reason for adverse employment decision.  *Equal Employment Opportunity Comm'n v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).  The consideration of a reduction in force to be presumptively legitimate stems, in part, from the Fifth Circuit's reluctance to substitute its own business judgment for that of the actual business itself.  *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992).

After the close of the 2007 Legislative Session, TWDB developed its internal operating budget for Fiscal Year 2008.  Appx. 175-74, Ex. I, Bankhead Aff. ¶¶ 3-4.  The internal operating budget was developed based on the amount of funds the Legislature authorizes to be appropriated in House Bill 1 to different strategy areas within TWDB.  Appx. 175-74, Ex. I, Bankhead Aff. ¶¶ 3-4; Appx. 232, Ex. J, Glenn Aff. ¶¶ 14-15.  In the Central Administration Strategy reflected in House Bill 1 (which includes program areas such as O&A, Executive, Governmental Relations, Internal

---

Audit, Finance, and Legal), TWDB received an increase in appropriation authority in 2008-2009. Appx. 176, Ex. I, Bankhead Aff. ¶ 5; Appx. 179-94, Ex. I-1-I-2.  However, this authority was not comprised entirely of general revenue; it included earned federal funds that are based on indirect receipts from federal funds.  Appx. 176, Ex. I, Bankhead Aff. ¶ 6.  Each year TWDB submits an indirect federal rate plan and this indirect rate changes every year.  *Id.*  For fiscal year 2007, the indirect rate was approximately 36.4% and for fiscal year 2008 the indirect rate decreased to approximately 30.71%.  *Id.*  In 2007, TWDB received less indirect federal funding than it anticipated and therefore did not fully utilize the authority granted in House Bill 1.  *Id.*; Appx. 179-87, Ex. I-1.  As a result, when the internal operating budget was developed after House Bill 1 was signed, some program areas received reduced funding based on the allocation methodology.  Appx. 114, Ex. H, Adams Aff. ¶ 5; Appx. 232, Ex. J, Glenn Aff. ¶¶ 14-15; Appx. 176-77, Ex. I, Bankhead Aff. ¶¶ 6-10.

One of the program areas that was directly affected by this reduced federal funding was the O&A area, which included the Communications Group where Plaintiff was employed.  Appx. 176-77, Ex. I, Bankhead Aff. ¶¶ 6-10.  The O&A division was approximately $80,000.00 over budget for Fiscal Year 2008.  Appx. 41, Ex. B, Glenn Dep. 58:2-8, 61:2-7; Appx. 232, Ex. J, Glenn Aff. ¶¶ 14-15.  Glenn directed Chris Adams to prepare an analysis for her relating to potential budget cuts in the division.  Appx. 86, Ex. D, Adams Dep. 214:2-215:24; Appx. 114, Ex. H, Adams Aff. ¶¶ 5-6; Appx. 117, Ex. H-1.  Based on her review of the positions in the O&A area, Glenn determined that a reduction in force was necessary to meet the budget goals.  Such a reduction in force was necessary given that positions within O&A, including Plaintiff's position, are funded in part by general revenue, part indirect federal funds, and part earned federal funds.  Appx. 176, Ex. I, Bankhead Aff. ¶ 8; Appx. 227-28, Ex. I-4; Appx. 74-78, Ex. D, Adams Dep. 39:2-18, 170:22-174:5.  Thus, because TWDB received a reduction in the amount of federal funds it anticipated receiving in

Fiscal Year 2008, this had a direct impact on the funding for employee positions. Appx. 78-81, Ex. D, Adams Dep. 175:1-176:25, 178:16-179:6, 181:3-187:17; Appx. 176, Ex. I, Bankhead Aff. ¶ 8.

Glenn identified two positions that could be eliminated through a reduction in force, one of which was the position Plaintiff held.   Glenn made this decision based on the fact that her area had created a position for Plaintiff in December 2005 and he was essentially performing functions that could be completed by other individuals in his group.  Appx. 42, Ex. B, Glenn Dep. 63:16-25, 64:1-2; Appx. 232, 234, Ex. J, Glenn Aff. ¶¶ 14-16, 23.  In making this decision, Glenn communicated with Plaintiff's supervisor, Daws, regarding the elimination of Plaintiff's position, and she agreed that Plaintiff's position was the least critical position in her group.  Appx. 42, Ex. B, Glenn Dep. 63:1-65:10.  As a result, Glenn eliminated Plaintiff's position and one other position in her area in order to meet the target internal operating budget for her area.  Appx. 232, Ex. J, Glenn Aff. ¶¶ 14-16.  TWDB's decision to eliminate Plaintiff's position was not in any way related to Plaintiff's age. Appx. 234, Ex. J, Glenn Aff. ¶ 23.  As a result, these articulated legitimate and non-discriminatory reasons justified the actions of TWDB in terminating Plaintiff.

### 3. *Plaintiff Cannot Show That The Proffered Explanations Given By TWDB Are False And Are In Reality A Pretext For Intentional Age Discrimination.*

Now that TWDB has presented evidence of legitimate, non-discriminatory reasons for the actions with respect to Plaintiff, the inference of discrimination raised by Plaintiff's *prima facie* case drops out and the burden then shifts back to the Plaintiff to show that the proffered reasons are actually a pretext for intentional discrimination.  *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804.  Plaintiff must make a showing sufficient for the fact finder to find that the reason given was not the true motivation "for the employment decision and that unlawful discrimination was."  *Bodenheimer v. PPG Indus., Inc,* 5 F.3d 955, 957 (5th Cir. 1993).  Because Plaintiff cannot meet this burden, Ward, in his official capacity, is entitled to summary judgment.

Plaintiff has provided no evidence, and Plaintiff is unable to provide such evidence that TWDB's articulated reasons for his termination were mere pretexts to disguise intentional age discrimination nor is there any such testimony that provides any reasonable basis for inferring such discrimination.   In a discrimination case, it is incumbent upon the non-moving party to present evidence of discrimination, not just conjecture and speculation.   *Grimes v. Texas Dep't of Mental Health and Mental Retardation,* 102 F.3d 137, 140 (5th Cir. 1996).   Neither conclusory allegations nor unsubstantiated assertions are sufficient to satisfy the non-movant's burden.   *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).   Personal beliefs are not evidence on which a verdict may rest because they do not raise a genuine issue of material fact.   *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985).

Plaintiff has stated that his claim for age discrimination is based simply on the fact that he was over 40 years old when he was terminated and that he was generally aware that other individuals over the age of 40 had been terminated as well.   Appx. 16-17, Ex. A, Amsel Dep. 86:23-87:13, 89:1-13.   All Plaintiff appears to allege is that he "feels" his termination was based on his age.   Appx. 17, Ex. A, Amsel Dep. 89:14-90:24.   Yet, without any proof whatsoever of any specific age animus on the part of Glenn or anyone else at TWDB, he cannot establish pretext.   If anything, Plaintiff's testimony only supports a probable inference that Glenn, and perhaps even Daws, had a personal dislike for Plaintiff.   *See* Appx. 25-26, Ex. A, Amsel Dep. 122:14-127:17.   Nevertheless, "evidence of mere dislike is not enough to prove pretext under [the discrimination statutes]." *Grimes*, 102 F.3d at 143.

Plaintiff cannot demonstrate that TWDB's reasons were false and that it was really trying to terminate him because of his age.   Plaintiff offers nothing more than his own subjective beliefs that he feels he was terminated because of his age.   Appx. 17, 25-26, Ex. A, Amsel Dep. 89:14-90:24, 122:14-127:17.   As Plaintiff's only evidence of any disparate treatment on the basis of age, Plaintiff

has failed to create a genuine issue of material fact.  To be sure, the Fifth Circuit has held that such subjective suspicions are not competent summary judgment.  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *see also Lawrence v. Univ. of Tex. Medical Brach at Galveston*, 163 F.3d 309, 312 (5th Cir. 1999) ("Neither 'unsubstantiated assertions' nor 'conclusory allegations' can satisfy the non-moving party's burden.") (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)).  Further, Plaintiff's complaints that Glenn treated him unfairly are not sufficient to establish pretext for age discrimination.  *See, e.g., Mikel v. Conn's Appliances*, No. 1:07-CV-598, 2007 WL 4333340, at *3 (E.D. Tex. Dec. 7, 2007) ("Ultimately, the question is not whether plaintiff was treated unfairly, but rather he was treated differently *because* of his [age].").

What is apparent from Plaintiff's position throughout this case is that he does not agree with TWDB's decision to eliminate his position through a reduction in force.  Specifically, Plaintiff contends, and attempts to introduce testimony through an expert witness, that TWDB had sufficient budgetary flexibility to retain him as an employee and that it could have exercised its discretion in a different manner when developing its internal operating budget for Fiscal Year 2008.[11]  Appx. 98-100, Ex. F, Lemon Dep. 37:8-45:16, 49:15-53:7; *see also* Appx. 266-68, Ex. W.  Nevertheless, Plaintiff's perceptions about what business decision TWDB could have made is not any evidence that TWDB terminated him because of his age.  In other words, while Plaintiff's arguments may suggest that TWDB could have made a different decision or it erred in assessing the shortfalls in its internal operating budget for Fiscal Year 2008, they do not establish pretext, for "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with

---

[11] Defendants have objected to Plaintiff's designation of Leslie Lemon as an expert witness, and this motion is currently pending before the Court.  Plaintiff's expert also attempts to opine as to how the agency could have developed its budget and made different decisions in order to retain his position while it faced budgetary constraints in Fiscal Year 2008.  Appx. 94-95, 97-101, Ex. F, Lemon Dep. 17:24-20:2, 21:7-22:11, 31:18-37:7, 46:4-48:4; *see also* Appx. 266-68, Ex. W.  Yet, Plaintiff's expert offers nothing more than the ability to second-guess TWDB's business decision in developing its internal operating budget.  Such testimony is entirely irrelevant to the issue of whether TWDB terminated Plaintiff for an illegal reason.

discriminatory motive."[12]   *Mayberry v. Vought Aircraft*, 55 F.3d 1086, 1091 (5th Cir. 1995). "While the matter could have been handled differently, it is not the court's place to second-guess management's business decisions or to serve as a self-appointed, corporate personnel manager." *Patton v. United Parcel Services, Inc.*, 910 F. Supp. 1250, 1267 (S.D. Tex. 1995) (citing *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1165 (5th Cir. 1993)); *Deines v. Texas Dep't of Prot. & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) ("We have previously emphasized that 'discrimination laws [are not] vehicles for judicial second-guessing of business decisions.'"). "Furthermore, [the ADEA] does not make an employer liable for simply erroneous or arbitrary decision." *Patton*, 910 F. Supp. at 1267; *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (5th Cir. 1986).

Accordingly, Plaintiff has provided no evidence, and Plaintiff is unable to provide such evidence, that TWDB's articulated reasons for his termination were mere pretexts to disguise intentional age discrimination nor is there any such testimony that provides any reasonable basis for inferring such discrimination.   As a result, this Court should find that his claims of age discrimination fail as a matter of law.

### 4.   This Court Should Grant Summary Judgment On Plaintiff's Prescriptive and Proscriptive FMLA Claims.

This Court should grant summary judgment on Plaintiff's FMLA claim brought pursuant to 29 U.S.C. §§ 2615(a)(1) and (a)(2).[13]   The FMLA contains two separate sets of provisions.   It provides both prescriptive, substantive entitlements to eligible employees and proscribes

_____

[12] To the extent Plaintiff attempts to claim that TWDB's reasons for eliminating Plaintiff's position was pretextual due to the fact that they conducted realignments after he left which resulted in additional employees joining O&A, his claim still lacks legal merit.  Plaintiff is once again asking this Court to second guess the business decision TWDB to more efficiently organize its agency.   Plaintiff also misunderstands the funding component nature of each position within O&A.   While there may have been a realignment after his position was eliminated, the additional employees who joined the division were primarily federally funded and not funded through the same methods as Plaintiff's position.  Appx. 83-84, Ex. D, Adams Dep. 203:1-205:4, 205:21-207:23.

[13] Plaintiff's FMLA claims are asserted against Ward, in his official capacity.  *See* Complaint ¶¶ 51-58.

_____

discrimination against eligible employees for taking advantage of these statutory entitlements. *Hunt v. Rapides Healthcare Sys., LLC.*, 277 F.3d 757, 763 (5th Cir. 2001).

Plaintiff's prescriptive claim fails as a matter of law because he cannot demonstrate that he was an eligible employee entitled to exercise the benefits provided by the FMLA or that he has been prejudiced by any denial of his FMLA rights. "Under the FMLA, an eligible employee is entitled to take up to 12 work weeks of leave in a 12-month period when, e.g., the employee has a serious health condition that makes [him] unable to perform the duties of [his] position." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) (*citing* 29 U.S.C. § 2612(a)(1)(D)). To establish a claim for FMLA interference or entitlement, Plaintiff must show he was an eligible employee, defendant interfered, restrained or denied his exercise of FMLA rights, and he was prejudiced by the violation of those rights. *Mahoney v. Ernst & Young, LLP*, 487 F. Supp. 2d 780, 799 (S.D. Tex. 2006). Plaintiff claims that he was protected under the FMLA at the time of TWDB's unlawful acts and at the time he was terminated. Complaint ¶ 53.

An employee is "eligible" for FMLA if the employee has been employed "for at least 12 months by the employer . . . and for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A)(ii); *see also* Appx. 122-24, Ex. H-4. In calculating the "hours worked," the FMLA incorporates by reference the use of that term under the Fair Labor Standards Act. 29 U.S.C. § 2611(2)(C); 29 C.F.R. § 825.110(c). Therefore, paid vacation, holidays, sick leave, and FMLA leave are not included in the 1,250 hour calculation. 29 U.S.C. § 207(e)(2). An employer may choose one of four ways to calculate the 12-month period in which the employee's potential FMLA leave accrues: (1) the calendar year, (2) any fixed 12-month leave period, such as a fiscal year, (3) the 12-month period measured forward from the date any employee's first FMLA leave begins, or (4) a "rolling" 12-month period measured backward from the date an employee uses any FMLA leave. 29 C.F.R. § 825.200(b); *Hunt*, 277 F.3d at 765. In this

case, TWDB has always used the 12-month leave year that runs from the date the employee first exercises his FMLA leave.  Appx. 122-24, Ex. H-4.

Plaintiff exercised his right to FMLA leave on May 30, 2006.  Appx. 362-63, Ex. U; Appx. 146-74, H-18; Appx. 4-5, Ex. A, Amsel Dep. 25:24-28:5, 29:18-30:17.  Plaintiff was thus eligible to take up to 12 weeks (480 hours) of paid/unpaid leave in a 12-month period (or until May 29, 2007) consecutively, intermittently, or on a reduced work-week basis.  As indicated in the chart below, a review of Plaintiff's time sheets from June 2006 until May 2007 reveals that he exceeded his 480 hours of FMLA leave on April 25, 2007 and only worked a total of 823 hours for the 12-month period following the first day he exercised his right to FMLA on May 30, 2006.

| MONTH | FMLA HOURS EXERCISED | TOTAL HOURS WORKED |
|---|---|---|
| June 2006 | 123 | 45 |
| July 2006 | 10 | 122 |
| August 2006 | 0 | 60 |
| September 2006 | 0 | 124 |
| October 2006 | 0 | 166 |
| November 2006 | 24 | 96 |
| December 2006 | 0 | 94 |
| January 2007 | 32 | 100 |
| February 2007 | 0 | 16 |
| March 2007 | 168 | 0 |
| April 2007 | 136 | 0 |
| May 2007 | 0 | 0 |
| TOTALS | 493 | 823 |

Appx. 146-74, H-18; Appx. 5-12, Amsel Dep. 30:23-60:13.  Because Plaintiff had already used his allotted 480 hours of FMLA leave, he was not eligible to receive any additional leave under the FMLA during this 12-month period.  In order to qualify for additional FMLA leave, Plaintiff was required to re-qualify for another 12-week period leave and demonstrate that he worked for a total of 1,250 hours during the 12-month prior to June 2007.  The undisputed evidence reveals that Plaintiff worked only a total of 823 hours and, accordingly, did not qualify for an additional FMLA leave event in June 2007.  Appx. 146-74, H-18; *see* 29 U.S.C. § 2611(2); *Satterfield v. Wal-Mart*

*Stores, Inc.*, 135 F.3d 973, 975 (5th Cir. 1998).   Plaintiff's claim that TWDB interfered with the exercise of his FMLA leave in June 2007 by denying him additional FMLA leave is therefore without merit.   As a result, this Court should grant summary judgment on Plaintiff's prescriptive FMLA claim because he fails to meet the definition of an "eligible employee."

Moreover, even if Plaintiff could establish that he is an "eligible employee," he has failed make the requisite showing that he was prejudiced by any alleged denial of his FMLA rights.  *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Mahoney*, 487 F. Supp. 2d at 799.  Plaintiff claims that because he inquired when his next FMLA was to begin on April 23, 2007 and June 28, 2007 and TWDB failed to respond to his requests, this was a violation of the FMLA.  Appx. 2-4, 14, Ex. A, Amsel Dep. 18:25-19:14; 21:14-22:7, 25:22-24:16, 77:21-78:3.   Plaintiff, however, is mistaken.   When an employee requests leave, it is the employer's responsibility to determine whether an employee's leave request is covered by the FMLA and to notify the employee accordingly.   *See* 29 C.F.R. § 825.208(a); 29 CFR § 825.301(c)(1).   Nevertheless, a technical violation of the FMLA does not in and of itself give rise to a private right of action.  *See, e.g., Saroli v. Automation and Modular Components, Inc.*, 405 F.3d 446, 453 (6th Cir. 2005) (finding that no violation unless under the FMLA unless the employee is prejudiced); *Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999) (no FMLA right of action if a "plaintiff did not suffer any repercussions from [the employer's] action").   It is only in the event of a showing that the failure constituted a violation of 29 U.S.C. § 2615, prohibiting an employer from interfering with the exercising of any right under the Act, that a right of recovery will be found to exist.  *Saroli*, 405 F.3d at 453.   Given that Plaintiff was not eligible for leave under the FMLA in June 2007 because he had not worked the requisite hours in the prior calendar year, the alleged violation he relies on to support his FMLA claim was clearly not prejudicial to him.

---

Plaintiff also cannot claim that TWDB denied him the right to be reinstated at the conclusion of his FMLA leave.  The evidence establishes that as of the date his FMLA leave expired on April 25, 2007 and as of the date he was notified that his position would be eliminated, Plaintiff had not been released to return to work by any of his physicians.  Appx. 105, Ex, G, Alsup Dep. 26:3-24; Appx. 50-51, Ex. B, Glenn Dep. 161:6-14, 165:12-167:6, Appx. 233, Ex. J, Glenn Aff. ¶ 18; Appx. 140-44, 252, Exs. J-12, H-15-H-16.[14]  Nor had Plaintiff attempted to return to work on or before the date his FMLA leave expired on April 25, 2007.    Appx. 140-44, 391-92, Exs. H-15-16, AA, Z. Instead, Plaintiff applied for and ultimately received leave from TWDB's sick leave pool in the same month his FMLA leave expired and remained on sick leave until he was notified his position was being eliminated.[15]  Appx. 145, Ex. H-17.  The Fifth Circuit has made it clear that the FMLA does not protect an employee who fails to return to work on or before the date his FMLA leave expires.  *See Hunt*, 277 F.3d at 763.  Accordingly, Plaintiff has failed to show that he has been prejudiced by any violation of his right to reinstatement at the expiration of his FMLA leave.  *See also* 29 C.F.R. § 825.216(c); *Mahoney*, 487 F. Supp. 2d at 806.[16]

Finally, Plaintiff's prospective claim fails because Plaintiff cannot demonstrate that TWDB retaliated against him for exercising his right to leave under the FMLA.  A plaintiff may be entitled to recovery if the employer retaliates against him for exercising his FMLA rights.  29 U.S.C. §§ 2615, 2617.  Because Plaintiff has not produced any direct evidence of retaliation, his FMLA claim is governed by the *McDonnell Douglas* burden-shifting framework.  *See Mauder v. Metropolitan*

---

[14]   As of the date of filing this motion, Plaintiff still has not produced any evidence that he has been released to return to work from any doctor.  *See* Appx. 107, Ex. G, Alsup Dep. at 45:5-17; Appx. 364-65, Ex. V.

[15]  Significantly, Plaintiff's only communication prior to his FMLA leave expiring was to ask how to designate FMLA leave time on his timesheets and when his next FMLA event began.  Appx. 325-26, K-6-K-7.  Plaintiff never expressed any intention that he was able to return to work.  Nor do Plaintiff's communications after the expiration of his FMLA offer him any support.  To be sure, Plaintiff explained in emails dated June 6, 2007 and June 28, 2007 that he was still not able to return to work and that he was considering applying for extended sick leave pool once his 720 hours of paid leave expired.  Appx. 324, Ex. K-5; Appx. 316-17, Ex. K, Daws Aff. ¶ 9.

[16] Once Plaintiff used up his twelve weeks of leave under the FMLA, TWDB had no obligation under the FMLA to provide him with any additional leave unless he qualified for it.  *See Manns v. ArvinMeritor, Inc.*, 291 F. Supp. 2d 655, 660 (N.D. Ohio 2003) ("Once an employee exceeds his twelve work weeks (or sixty workdays) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will not violate the FMLA.").

*Transit Authority of Harris County, Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).  To establish a *prima facie* case of retaliation, he must demonstrate that (1) he was protected under the FMLA; (2) he suffered an adverse employment action; (3a) he was treated less favorably than an employee who had not requested leave under the FMLA or (3b) the adverse decision was made because he sought protection under the FMLA.  *Id.*  Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for its adverse employment action.  *Richardson v. Monitronics, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

In this case, TWDB concedes that that Plaintiff's termination constitutes an adverse employment action for purposes of his *prima facie* case.  Because Plaintiff does not contend that any other employee who had not requested FMLA leave was treated more favorably than he was, this Court must assess (1) whether Plaintiff was protected under the FMLA at the time of his termination, and (2) whether he was terminated because of his leave.  Appx. 15, Ex. A, Amsel Dep. 83:25-84:17.  Plaintiff cannot establish a *prima facie* case of retaliation because, as discussed *supra*, he cannot demonstrate he was protected under the FMLA at the time of his termination.  Further, Plaintiff cannot establish that he was terminated because of his leave.  Indeed, Plaintiff's entire claim appears to be premised on the fact he attributes his termination to his inquiry on June 26, 2007 about when his next FMLA event would begin, which was approximately 7 days before he received notice his position was being eliminated through a reduction in force.  The timing of Plaintiff's termination, however, does not support an inference of retaliation or discrimination.

"When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." *Mauder v. Metropolitan Transit Authority of Harris County, Texas,* 446 F.3d 574, 583 (5th Cir. 2006). While Plaintiff's termination occurred over three months after his FMLA leave expired and several days after he submitted an inquiry regarding another request for FMLA leave,

this does not create an inference of retaliation.  *See Jarjoura v. Ericsson, Inc.,* 266 F. Supp. 2d 519, 531 (S.D. Tex. 2003), *aff'd,* 82 Fed. App'x 998 (5th Cir. 2003) (unpublished).  Plaintiff essentially argues that since his termination came so close in time to the expiration of his FMLA leave and his subsequent inquiry for additional FMLA leave, retaliation must have been the reason for his termination.  Appx. 15, Ex. A, Amsel Dep. 84:18-6, 85:14-20.  However, without more, the same is insufficient to infer that retaliatory discrimination took place because the Plaintiff took or requested FMLA leave.  *See Jarjoura,* 266 F. Supp. 2d at 531.  "Stated another way, timing alone is not enough to support retaliation when evidence shows that the employer's actions were justified."  *Id.* (citation omitted).  Based on the foregoing, this Court should grant summary judgment on Plaintiff's claim of retaliatory or discriminatory discharge.

Assuming Plaintiff could establish the elements of his *prima facie* case, he has no evidence that TWDB's reasons for terminating him were pretexts for discrimination or retaliation.  TWDB eliminated Plaintiff's position in a reduction in force that was necessary due to budget constraints during Fiscal Year 2008.  *See supra* § VI.B.2.  This is a legitimate, non-discriminatory, and non-retaliatory reason and shifts the burden to Plaintiff to show that it was pretext to discriminate or retaliate against him for exercising his right to FMLA leave.  To show pretext, Plaintiff appears to rely solely on the temporal proximity of his request for additional leave and TWDB's action and his own subjective beliefs.  Appx. 15, Ex. A, Amsel Dep. 84:18-6, 85:14-20.  However, once the employer offers a legitimate, nondiscriminatory, or non-retaliatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.  *Woodson v. Scott & White Mem'l Hosp.,* 255 Fed. App'x 17, 18 (5th Cir. 2007) (quoting *McCoy v. City of Shreveport,* 492 F.3d 551, 562 (5th Cir. 2007)).  Plaintiff's evidence, however, consists of nothing more than his speculation from the timing of his FMLA inquiries and his termination, and this is not evidence is insufficient in the Fifth Circuit to

---

demonstrate pretext.  Appx. 15, Ex. A, Amsel Dep. 84:18-85:6; *see Jarjoura,* 266 F. Supp. 2d at 531 ("[T]iming alone is not enough to support retaliation . . . ."); *see also Price v. Marathon Cheese Corp.,* 119 F.3d 330, 337 (5th Cir. 1997) ("[One] cannot merely rely on his subjective belief that discrimination occurred . . . .").  Accordingly, this Court should grant summary judgment on Plaintiff's FMLA claims.

### 5. The Court Should Grant Summary Judgment On Plaintiff's ADA and Rehabilitation Act Claims.[17]

#### 1. *Plaintiff Has Not Established He Is "Disabled."*

Under the ADA and Rehabilitation Act, a person is "disabled" if: (1) he has a physical or mental impairment, (2) that substantially limits a major life activity, and (3) has a record of such an impairment or is regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 U.S.C. § 705(9)(B); 29 C.F.R. § 1630.2(g).  Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); 29 C.F.R. § 1630.2(i).  The statutory definition of disabled is "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).[18]  To this end, "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Id.* at 198.  Instead, for an impairment to "substantially limit a major life activity," the plaintiff "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at

---

[17]  Plaintiff has asserted his ADA failure to accommodate and disparate treatment claim against Ward, in his official capacity. Complaint ¶¶ 30-36.  Plaintiff's Rehabilitation Act claim is asserted against TWDB and Ward, in his official capacity. *Id.* ¶¶ 37-44.  Even though this Court should dismiss Plaintiff's ADA and Rehabilitation Act claims on the basis of judicial estoppel, Defendant will still address the merits of Plaintiff's disability discrimination claims.

[18]  Congress essentially overturned *Toyota* by passage of the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009. Pub. L. No. 110-325, 122 Stat. 3553 (2008).  However, the changes to the scope of the term "disability" contained in the ADAAA do not apply retroactively.  *EEOC v. Agro Distrib.*, 555 F.3d 462, 469-70 n.8 (5th Cir. 2009).  The events giving rise to the instant suit took place prior to the effective date of the ADAAA.  Therefore, in analyzing whether Plaintiff qualifies as an individual with a disability, the Court must apply the pre-ADAAA definition of "disability," including cases such as *Toyota* that serve to interpret the pre-ADAAA definition.

---

198; *see also Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999).  Further, the "impairment must not just limit or affect, but must *substantially* limit a major life activity." *Waldrip v. General Electric Co*., 325 F.3d 652, 655 (5th Cir. 2003) (emphasis in original).[19]  In determining whether an impairment "substantially" limits a major life activity, the court must analyze the limitation the impairment allegedly imposes on the plaintiff's performance of the particular major life activity at issue in comparison to most people *in the general population. See* 29 C.F.R. §§ 1630.2(j)(1)(i), (ii).

Plaintiff contends that he is disabled under the ADA by virtue of heart disease and a digestive disorder because both substantially limit his performance of the major life activities of eating, breathing, walking, bending, vacuuming a room, sweeping a floor, rolling a trash can to the street, enduring stress, and talking for long periods of time.[20]  *See* Complaint ¶¶ 9, 39.  Heart disease constitutes a physical impairment under the ADA.  45 C.F.R. pt. 84, App. A, subpart (A)(3).  Further, Plaintiff's digestive disorder fits within the definition of "physical impairment" adopted by the EEOC.  *See* 29 C.F.R. § 1630.2(h)(1) ("Any physiological . . . condition . . . affecting . . . digestive . . . and endocrine [systems]").  However, in order to constitute a disability within the meaning of the statute, a physical impairment must "substantially limit[] one or more of the major life activities of an individual."  42 U.S.C. § 12102(2)(A).  Even viewing the evidence in the light that is most favorable to Plaintiff, he has not demonstrated that his heart disease or digestive disorder have substantially limited any of his major life activities.

Plaintiff claims that he is substantially limited in the major life activity of walking.  Yet, in his deposition, Plaintiff readily admitted to talking walks—even conceding he has "walked miles with no problems"—and just contends he cannot "walk quickly."  Appx. 19, Ex. A, Amsel Dep.

---

[19] Factors considered in determining whether an individual is substantially limited in a major life activity include "[t]he nature and severity of the impairment," "[t]he duration or expected duration of the impairment," and "the permanent or long term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

[20] Even though Plaintiff may have been diagnosed with heart disease and a digestive disorder by medical professionals, it is not sufficient for an ADA plaintiff "to merely submit evidence of a medical diagnosis of an impairment."  *Toyota*, 534 U.S. at 198.

97:18-21, 100:8-14.  Plaintiff testified that when he is walking if he experiences chest pain, he "take[s] nitroglycerin, recovers, and moves on."  Appx. 19, Ex. A, Amsel Dep. 97:18-21.  Plaintiff also testified that he does walk uphill, but not "for long."  Appx. 19, Ex. A, Amsel Dep. 97:18-21.  While there is no doubt that Plaintiff may perform the major life activity of walking under different conditions and experience some impairment to his ability to walk than the average individual in the general population, his testimony does not show that these differences rise to the level of a substantial impairment as required by the ADA or the Rehabilitation Act.  *Talk v. Delta Airlines, Inc.*, 265 F.3d 1021, 1025 (5th Cir. 1999) ("[M]oderate difficulty experienced while walking does not rise to the level of a disability."); *Okpulor v. PNC Bank*, No. 3:04-CV-1755, 2005 WL 6047275, at *4 (N.D. Tex. Dec. 15, 2005) ("Plaintiff has not shown that her impairment substantially limits her ability to walk.  [Plaintiff's] deposition only establishes that Plaintiff's impairment inhibits her ability to walk for long distances.").  Indeed, a "mere difference" in the manner, condition, and duration of an individual's performance of a major life activity cannot establish that an individual is disabled; there must be a "significant restriction" of an individual's performance of a major life activity.  *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565-66 (1999).  Plaintiff's inability to walk quickly or for long distance constitutes a mere difference with the average person, not a considerable difference as required by the ADA and Rehabilitation Act.[21]

Plaintiff's assertion that he is substantially limited in the major life activity of eating also fails.  Plaintiff explained that he is not able to digest food normally after having cancer-related surgery, has to "stop eating early in the evening," experiences nausea if he lies down within three or four hours of eating, and has a "dumping reflex."  Appx. 22, Ex. A, Amsel Dep. 111:6-112:8.  Plaintiff stated that to control this problem, he tries not to eat anything spicy or large potions of food

---

[21] Plaintiff's impairment is quite similar to those in cases where a walking impairment was deemed not to constitute a disability.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996) (plaintiff was deemed not disabled despite having walking impairment that prevented him from walking "more than a mile or so" and required him to pace himself slowly when walking up stairs); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1996) (a plaintiff who could not "walk briskly" was ruled not disabled because her inability did not substantially limit ability to walk).

and tries not to leave the house in the morning until his digestive problems are stabilized.  Appx. 22, Ex. A, Amsel Dep. 111:6-112:8.  Nevertheless, Plaintiff admitted that his digestive problems are better "to the extent that [he has] learned pretty much how to live with it except that [he] sometimes has days, weeks, hours where it gets out of control."  Appx. 18, Ex. A, Amsel Dep. 93:19-94:14. Indeed, Plaintiff explained that he has switched to a vegan diet and takes specific medication that have helped his condition and nausea.  Appx. 22, Ex. A, Amsel Dep. 112:9-113:1.  Plaintiff's testimony reveals that while he experiences difficulty eating and digesting food, he has successfully compensated for his impairment through adjustments in his diet and schedule.  Such mitigating measures are essential to a determination of whether Plaintiff is disabled: "[M]itigating measures must be taken into account in judging whether an individual possesses a disability.  We see no principled basis for distinguishing between measures taken with artificial aids, like medications and devices, and measures undertaken, whether consciously or not, with the body's own systems." *Albertson's*, 527 U.S. at 565-66.  Because Plaintiff's testimony reveals that his conditions occasionally produced symptoms which impaired his ability to eat and digest food, his conditions to do not place substantial limitations.

There is also no evidence that Plaintiff's breathing has been significantly restricted as compared to the condition, manner, or duration under which the average person in the general population can breathe or talk.  See 29 C.F.R. § 1630.2(j)(1).  Plaintiff testified that while he may "gasp for air" or "get short of breath," he does not "have trouble breathing per se."  Appx. 20-21, Ex. A, Amsel Dep. 104:17-106:2.  In fact, he admitted his "lungs are perfectly fine to the best of [his] knowledge."  Appx. 20, Ex. A, Amsel Dep. 104:17-23.  With respect to the major life activity of talking, Plaintiff stated that he typically does not have difficulty talking and that his problems stem from the fact his voice is weak due to his cancer surgery.  Appx. 22, Ex. A, Amsel Dep. 109:19-110:12.  Plaintiff stated that he could not confirm how long he could talk before it became a

_____

problem for him, but noted during his approximately five and half hour deposition that he was doing "fairly well here."  Appx. 22, Ex. A, Amsel Dep. 109:19-110:12.  Based on his testimony, Plaintiff has failed to create a genuine issue of material fact as to whether his breathing or talking is substantially limited.  *See Robinson v. Global Marine Drilling Co.,* 101 F.3d 35, 37 (5th Cir. 1996) (holding that "several instances of shortness of breath while climbing stairs do not rise to the level of substantially limiting the major life activity of breathing"); *Land v. Baptist Med. Ctr.,* 164 F.3d 423, 425 (8th Cir. 1999) (holding that breathing was not substantially limited when breathing problems arose infrequently); *cf. U-Haul Co. of Cleveland v. Kunkle,* 165 F.3d 29, *5 (6th Cir. 1998) (table) (finding breathing was substantially limited where plaintiff had to leave work to retrieve supplementary oxygen supply). Thus, Plaintiff can not be considered disabled simply due to some sporadic difficulties in his breathing or talking.

Plaintiff also claims that he is substantially limited in the major life activities of vacuuming a room, sweeping the floor, and rolling out the trashcan.  Nevertheless, Plaintiff admits that he is not prevented from vacuuming a room, but just that he cannot do it "regularly."  Appx. 21, Ex. A, Amsel Dep. 106:9-24.  He also states that he vacuums his house "every couple of weeks" and that this task is simply "not something [he] would choose to do if . . . there was someone always available to do it for [him]."  Appx. 21, Ex. A, Amsel Dep. 106:9-24.  Similarly, Plaintiff admits to sweeping the kitchen floor in his house "several times a day" and rolling out a trash can "every two or three weeks."  Appx. 21, Ex. A, Amsel Dep. 106:25-107-20.  Regardless of any problems Plaintiff claims to have with vacuuming a room, sweeping, or rolling out the trash can, these difficulties do not amount to Plaintiff being "substantially limited" in those activities.

Plaintiff also claims that his physical limitations on bending affect major life activities.  Courts in Texas, however, have determined that bending is not a major life activity.  *Smith v. Tuesday Morning Corp.*, Civil No. 3-06-CV-1046-R, 2007 WL 2851107, at *3 (N.D. Tex. Oct. 2,

2007) (citation omitted).[22]  Finally, Plaintiff cannot demonstrate that he is substantially limited in the major life activity of enduring stress.  Plaintiff's claim is essentially that his heart disease and digestive disorder make it more difficult for him to respond to stressful situations.  Appx. 21, Ex. A, Amsel Dep. 107:21-108:6.   The issue is how Plaintiff handles his resulting stress during the episodes where he talks to someone heatedly or is asked to do immediately do something.  Appx. 21, Ex. A, Amsel Dep. 105:3-9.  This claim would not, under *Toyota*, qualify as a substantial limitation on a major life activity.  Very few individuals find handling stress to be easy.[23]  Plaintiff has thus failed to show this Court that he could not perform some usual activity compared with the general population, or that he had a continuing inability to handle stress at all times, rather than only episodically.  *See, e.g., Calef v. Gillette Co.*, 322 F.3d 75, 86 (1st Cir. 2003) (employee with attention deficit hyperactivity disorder not disabled under the ADA absent showing that substantially limited in the major life activities of learning or speaking); *Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25, 31-32 (1st Cir. 2000) (even assuming ear impairment was a potential long-term condition, there was no evidence that it had a severe impact on plaintiff's functional ability to hear).  Accordingly, this Court should find that Plaintiff is not disabled under the ADA or the Rehabilitation Act.[24]

---

[22] While the ADA amendments provide a change in the definition of major life activities to include bending, these amendments do not apply retroactively.  *See Agro Distrib.*, 555 F.3d at 469-70 n.8.

[23] Further, TWDB notes that Plaintiff sat through a lengthy deposition and did not show any signs of not being able to handle the stress of such a situation.

[24] Even if a plaintiff does not have an "impairment that substantially limits one or more major life activities" as defined by § 12102(2)(A), he may claim the protection of the ADA or the Rehabilitation Act if he is "regarded as having such an impairment." 42 U.S.C. § 12102(2)(C).  A plaintiff has a "regarded as" disability if he (1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting, (2) has an impairment that is substantially limiting only because of the attitudes of others, or (3) has no impairment but is perceived by the employer as having a substantially limiting impairment. *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503 (5th Cir.2003) (citing *Bridges v. City of Bossier,* 92 F.3d 329, 332 (5th Cir. 1996)); *see also Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999).  Plaintiff cannot recover under this "regarded as" theory for at least three independent reasons: *First,* for the reasons stated herein, his claimed impairments are not "substantially limiting"; *Second,* for the reasons stated herein, even if Plaintiff was regarded as disabled there is no evidence that TWDB discriminated against Plaintiff because of or "solely by reason of" this perceived disability; and *Finally,* TWDB was under no obligation to provide accommodations to Plaintiff, even if it "perceived" him as disabled, because the Fifth Circuit has held that the "perception" of disability is insufficient to require an institution to provide accommodations. *See, e.g., Newberry v. East Tex. State Univ.,* 161 F.3d 276, 280 (5th Cir. 1998) (holding "an employer need not provide

---

### 2.  *Plaintiff's Failure to Accommodate Claim Is Without Merit.*

Even assuming that Plaintiff establishes he is disabled, this Court should grant summary judgment because he cannot substantiate his claim that TWDB failed to reasonably accommodate him.  Under the ADA, an employer "discriminates" against an employee if it fails to "make[] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee."  42 U.S.C. § 12112(b)(5)(A).  An ADA plaintiff in a failure to accommodate claim must qualify as an individual with a disability; *see Mason v. United Air Lines*, 274 F.3d 314, 316 (5th Cir. 2001), and must also "show the employer knew of such employee's substantial physical or mental limitation."  *Taylor v. Principal Financial Group*, 93 F.3d 155, 164 (5th Cir. 2006).  "In general, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed.  Once such a request has been made, the appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability."  *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005) (internal citation and quotation marks omitted) (citing 29 C.F.R. § 1630.9).  Thus, it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one."  *Taylor*, 93 F.3d at 165.  "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one."  *Id*.

In this case, the record evidence demonstrates that TWDB granted Plaintiff *every* accommodation he requested, some of which were accommodations he did not request pursuant to the protections afforded by the ADA or Rehabilitation Act.  When Plaintiff was employed in the IT Department under Lindgens, TWDB allowed him to work a flexible work schedule and allowed Plaintiff to perform work from home for 2-3 hours per day when he did not feel well enough to

---

reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment").

---

come to the office.  Appx. 34, Ex. A, Amsel Dep. 171:2-21; Appx. 129, Ex. H-5.  While in this

position, Plaintiff never complained to anyone that he was not being accommodated or that he was

denied any requested accommodation.  TWDB also created a position for Plaintiff in the O&A

division because Plaintiff claimed he needed a working environment that was not under the threat of

outsourcing in order to reduce his stress levels.  Appx. 43, Ex. B, Glenn Dep. 79:9-80:1; Appx. 230,

Ex. J, Glenn Aff. ¶¶ 4-5.  Nevertheless, none of these "accommodations" were granted because

Plaintiff was seeking a reasonable accommodation under the ADA.  Appx. 35-37, Ex. A, Amsel

Dep. 176:16-181:22; Appx. 360-61, Ex. T; Appx. 44, Ex. B, Glenn Dep. 89:13-20.

After Plaintiff transferred to the Program Specialist position in the Communications Group

in the O&A division in December 2005, TWDB continued to allow Plaintiff to work a flexible work

schedule and telecommute.  Appx. 44-46, 49, 54, Ex. B, Glenn Dep. 89:8-20, 104:18-106:2, 145:17-

146:11, 207:9-20; Appx. 230-31, Ex. J, Glenn Aff. ¶¶ 8-12; Appx. 316, Ex. K, Daws Aff. ¶ 4;

Appx. 319, Ex. K-1.  In March 2006, Glenn informed Plaintiff that she needed him to work a

consistent 8 hours each day, and that she would allow him to telecommute based on the type of

projects or work assigned to him.  Appx. 319, Ex. K-1; Appx. 54, Ex. B, Glenn Dep. 207:8-

208:25.[25]  From this point forward, Plaintiff was allowed to telecommute from home several hours a

day and work a flexible work schedule.  Appx. 23-24, 38, Ex. A, Amsel Dep. 115:17-25; 117:4-15,

193:23-23, 194:1-6; Appx. 252, Ex. J-12.  Plaintiff usually came to work at around 10:00 a.m. and

he received credit for the hours he worked at home from 8:00 a.m. to 10:00 a.m.; he often left work

early.  Appx. 64, 66, Ex. C, Daws Dep. 99:16-20, 136:18-25; 136:1-4.  The communications

between Plaintiff and his supervisors clearly demonstrate that TWDB engaged in an interactive

dialogue, and ultimately granted Plaintiff's request regarding allowing him to work a flexible work

[25] Because Plaintiff was a new member of her team, Glenn requested that Plaintiff provide TWDB with updated medical documentation from his physician in order to support his need to telecommute on a daily basis.  Even before she received the official medical documentation from his physicians and after she reviewed it, Glenn allowed Plaintiff the flexibility to perform work from home in an effort to work with him as a member of her team.   Appx. 231, Ex. J, Glenn Aff. ¶ 9; Appx. 137-38, H-12-H-13.

schedule.  Plaintiff never made any complaint regarding the flexible work schedule he received. Appx. 230-31, Ex. J, Glenn Aff. ¶¶ 8-12; Appx. 241, Ex. J-6.  Additionally, after Plaintiff exhausted all of his FMLA leave in April 2007, TWDB granted him 720 hours of leave from the sick leave pool so that he could continue to remain on paid leave status.  Appx. 145, Ex. H-17; Appx. 13, Ex. A, Amsel Dep. 80:12-16. And, after TWDB provided Plaintiff notice that his position was being eliminated, it also granted Plaintiff 26 hours of emergency leave in order for him to remain on paid leave status through the end of his employment.  Appx. 119, Ex. H-3.  Thus, Plaintiff has failed to identify any accommodation that TWDB denied to him that was reasonable under the circumstances.

To the extent Plaintiff contends that TWDB denied him a reasonable accommodation while he was on sick leave after the expiration of his FMLA leave, this claim is unconvincing.  On June 6, 2007, Daws sent an email to Glenn discussing that Plaintiff had called to let her know that "[h]is situation is still basically the same, with no improvement" and that he was "not released to work at this time." Appx. 252, Ex. J-12.  Daws also indicated that Plaintiff was "still trying to develop a list of options" and that "he had visited with ERS and may visit with Social Security to see what his disability retirement options are."  *Id*.  Daws also wrote that Plaintiff was "still very interested in any work at home opportunities, whether at this agency or any other, that would enable him to remain employed until he is eligible for retirement."  *Id*.  From this email, Plaintiff appears to argue that TWDB ignored his request for reasonable accommodation.  This email exchange, however, does not raise a genuine issue of material fact that TWDB ever denied Plaintiff a reasonable accommodation.  To be sure, Plaintiff never indicated he had been released to return to work from his physician.  Nor does this email constitute any proof of what accommodation he actually requested.[26]

---

[26] To the extent Plaintiff was seeking to telecommute one hundred percent of the time from home, this is not a reasonable accommodation request. Federal courts have held that employers are not required to permit telecommuting

---

Plaintiff also appears to claim that TWDB failed to provide him with additional FMLA leave as a reasonable accommodation.  Appx. 24, Ex. A, Amsel Dep. 117:16-23.  Plaintiff's position, however, is unsupportable.  Texas Courts have specifically held that "FMLA leave is not a reasonable accommodation under the ADA; rather, it is a right enforceable under a separate statutory provision."  *Munoz v. Echosphere, LLC*, 2010 WL 2838356, at *13 (W.D. Tex. July 25, 2010); *Trevino v. United Parcel Service*, No. 3:08-CV-0889-B, 2009 WL 3423039, at *12 (N.D. Tex. Oct. 23, 2009).  Moreover, any claim by Plaintiff that TWDB denied his request for extended sick leave as a reasonable accommodation would also fail.  After Plaintiff's FMLA leave expired and while he on sick leave, Plaintiff never communicated to TWDB that he had been medically cleared to return to work or offered a precise date when he intended to return.[27]  If anything, Plaintiff's communications only indicate that he "hoped" to return to work as soon as his medical condition would allow.  Appx. 252, Ex. J-12; Appx. 324, K-5.  However, a mere request for extended leave does not constitute a request under the ADA for continuing accommodations at work.  *See Dortch v. Memorial Herman Healthcare Sys.-SW.*, 525 F. Supp. 2d 849, 873 (S.D. Tex. 2007).  To be sure, the Fifth Circuit has held that a request for indefinite leave is not a reasonable

---

as a part of a reasonable accommodation.  *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998) ("An employer is not required to allow disabled workers to work at home, where their productivity inevitably would be greatly reduced.") (citation omitted); *see also Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995) ("it would take a very extraordinary case for the employee to be able to create a triable issue of the employer's failure to allow the employee to work at home.").  Furthermore, because Plaintiff's position in the Communications Group was customer-service based and required that he be available to serve the copying and printing needs of individuals at the TWDB, regular attendance at the office was necessary to perform the essential functions of his position.  As a result, working at home one hundred one percent of the time would not qualify as a reasonable accommodation.  *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) ("[a]n essential element of any government job is an ability to appear for work . . . and to complete assigned tasks within a reasonable period of time"); *see also Tyndall v. Nat'l Educ. Centers, Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) ("a regular and reliable level of attendance is a necessary element of most jobs"); *Law v. United States Postal Serv.*, 852 F.2d 1278, 1279-80 (Fed. Cir. 1988) (holding that "an agency is inherently entitled to require an employee to be present during scheduled work times, and, unless an agency is notified in advance, an employee's absence is disruptive to the agency's efficient operation"); *Walders v. Garrett,* 765 F. Supp. 303, 309-10 (E.D. Va. 1991 (holding that "employees cannot perform their jobs successfully without meeting some threshold of both attendance and regularity[;] the necessary level of attendance and regularity is a question of degree depending on the circumstances of each position, . . . however, . . . some degree of regular, predictable attendance is fundamental to most jobs"), *aff'd,* 956 F.2d 1163 (4th Cir. 1992).

[27] In Plaintiff's August 24, 2007 statement to ERS, he laid out his plan regarding his leave as follows:  "My position was terminated before I was able to negotiate accommodation with my employer (the TWDB) . . . I would have used extended sick leave pool (which I requested) and then remaining vacation time, and gone on leave-without-pay, then transitioned back into full-time work, if possible."  Appx. 329-36, Ex. M.

---

accommodation under the ADA and an individual who cannot attend work is not a qualified individual under the statute. *Rogers*, 87 F.3d at 759-60; *Bennett v. Calabrian Chems. Corp.*, 324 F. Supp.2d 815, 838 (E.D. Tex. 2004).   To constitute a request for accommodation under the ADA, documents or medical records must indicate an ongoing health problem that necessitates accommodation upon the employee's return.   *Dortch*, 525 F. Supp. 2d at 873.   Here, Plaintiff indicated that further absence from work would be necessary based on his physicians' observations, but this does not suggest what accommodations would be necessary upon his return or even when he might return to work.   Therefore, because Plaintiff cannot present evidence that TWDB denied any accommodation request or that it refused to engage in good faith negotiations related to the accommodation of his disabilities, this Court should grant summary judgment.

### 3. *Plaintiff Cannot Demonstrate A Claim For Disparate Treatment Under the ADA or Rehabilitation Act.*

Disparate treatment claims brought under the ADA and the Rehabilitation Act are governed in the same manner, with the sole exception being that the causation standard is different under each statute.   *See* 29 U.S.C. § 794(d).   To make out a *prima facie* case of disability discrimination, a plaintiff must establish four elements: "(1) He is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 511 (5th Cir. 2003) (citation omitted).   If this *prima facie* case is made, courts then apply the *McDonnell Douglas* burden shifting analysis.   The burden then shifts to the defendant to produce evidence of a nondiscriminatory reason for the employment action.   If such evidence is proffered, the burden of production then shifts back to the plaintiff to show that the nondiscriminatory justification was mere pretext.

Here, Plaintiff cannot establish a *prima facie* case of discrimination under the ADA or the Rehabilitation Act.   As discussed *supra*, Plaintiff cannot establish that he meets the statutory

definition of disabled under the ADA or the Rehabilitation Act because he is not substantially impaired in a major life activity. *See supra* § VI.C.1. Nor can Plaintiff demonstrate he is a qualified employee given that he has affirmatively represented to ERS that he cannot perform the functions of his job even with a reasonable accommodation. *See supra* § VI.A. Plaintiff also expressly testified that he does not believe any other similarly situated employees at TWDB were treated more favorably than him. Appx. 24, Ex. A, Amsel Dep. 120:13-19. Even assuming Plaintiff could establish a *prima facie* case of discrimination on the basis of disability, TWDB has stated a legitimate, nondiscriminatory business reason for Plaintiff's termination. TWDB eliminated Plaintiff's position through a reduction in force due to budgetary constraints that existed in Fiscal Year 2008. *See supra* § VI.B.2. Given that TWDB has proffered a legitimate business reason for its decision, the burden of persuasion shifts to Plaintiff to demonstrate pretext.

Under the ADA, "discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome." *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 835 (5th Cir. 2000). By contrast, in order to succeed in a section 504 claim under the Rehabilitation Act, Plaintiff must demonstrate that the alleged discrimination occurred "solely by reason of her or his disability"; demonstrating the disability was only a "motivating factor" for the adverse treatment is not sufficient. *Soledad v. United States Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002); *see also Woodford v. England*, 166 Fed. App'x 726, 727 (5th Cir. 2006).

For purposes of his ADA claim, Plaintiff can point to no evidence that indicates a discriminatory intent motivating his termination. Plaintiff only offers his bare speculation and subjective belief that TWDB terminated him because of his disability. Appx. 25-26, Ex. A, Amsel Dep. 121:13-122:5; 122:21-127:17. This evidence, however, is not sufficient to support a claim for disability discrimination. *See Douglas v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir.

_____

1996) (en banc) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion . . . ."). Plaintiff's bald allegations do not support an inference that TWDB's reason for termination was false. Rather, Plaintiff's allegations only serve to highlight the fact that he merely disagrees with TWDB's business decision or that he believes they could have made a different decision in determining whether to eliminate his position. *See supra* § VI.B.3. Plaintiff's assertions, standing on their own, fall far short of the substantial evidence of pretext that he must present to survive summary judgment. Because Plaintiff cannot meet the lower motivating factor standard under the ADA for establishing pretext, his claim under the Rehabilitation Act also fails as he cannot demonstrate he was terminated *solely* because he had a disability. Plaintiff can produce no evidence to demonstrate that TWDB's legitimate, nondiscriminatory reason for eliminating his position was pretextual. Accordingly, TWDB is entitled to summary judgment on Plaintiff's ADA and Rehabilitation Act claims.[28]

## CONCLUSION

Based on the foregoing, Plaintiff cannot demonstrate that there is any fact issue that underlies the validity of this case. Because Plaintiff can raise no question of material fact as to multiple requisite elements of his claims brought under the ADEA, FMLA, ADA, and Rehabilitation Act, Defendants are entitled to summary judgment in their favor and Plaintiff's claims should be dismissed with prejudice.

---

[28] To the extent Plaintiff attempts to assert a claim for hostile work environment or harassment under the ADA or Rehabilitation Act, it also fails. The Fifth Circuit recognizes a cause of action for disability-based harassment under the ADA and relies on the same elements of a hostile work environment claim under Title VII. *See Flowers v. Southern Regional Physician Servs., Inc.*, 247 F.3d 229, 232-36 (5th Cir. 2001). The alleged harassment must "be sufficient pervasive or severe to alter the conditions of employment and create and abusive working environment." *Id.* at 236. The court considers "the entirety of the evidence, including the frequency of the discriminatory conduct, it severity, whether it is physically threatening or humiliating, or a mere offensive utterance and whether it unreasonable interferes with an employee's work performance." *Id.* Notwithstanding the fact Plaintiff cannot establish he is a qualified individual under the ADA, the only harassment he points to is the fact that Glenn made him move offices four different times over the course of a year and informed he was no longer on the outsourcing list. Appx. 26, Ex. A, Amsel, Dep. 125:25-126:18. This alleged behavior, however, does not rise to the level to severe or pervasive.

Respectfully Submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

RUTH R. HUGHS
Director of Defense Litigation

ROBERT B. O'KEEFE
Division Chief

  /s/ Angela V. Colmenero
ANGELA V. COLMENERO
Texas State Bar No. 24048399
SHELLEY N. DAHLBERG
Texas State Bar No. 24012491
Assistant Attorneys General
General Litigation Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Phone No. (512) 463-2120
Fax No. (512) 320-0667

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent *via* the Court's electronic notification system on September 30, 2010, to:

Carlos R. Soltero
Stacey V. Reese
McGinnis, Lochridge & Kilgore, LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701

  /s/ Angela V. Colmenero
ANGELA V. COLMENERO
Assistant Attorney General